**STATE of Iowa, Appellee,**

**v.**

**Ellsworth YOUNGBEAR, Appellant.**

**No. 57566.**

Supreme Court of Iowa.

May 21, 1975.

Robert N. Clinton and Barry A. Lindahl, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Thomas J. Mann, Jr., Asst. Atty. Gen., Des Moines and Jared O. Bauch, County Atty., Traer, for appellee.

Heard by MOORE, C. J., and LeGRAND, REES, REYNOLDSON and HARRIS, JJ.

REES, Justice.

Defendant was charged by county attorney's information with the crime of murder. He pleaded not guilty to the charge, was tried to a jury, convicted and sentenced. He now appeals. We affirm.

The charge against defendant arose out of a shooting which occurred at the home of Clyde Papakee on the Tama Indian Settlement during the early morning hours of February 22, 1974. During the late evening hours of February 21, defendant had been drinking beer with a companion at two taverns in Tama. After the taverns closed defendant and his companion went to the Indian pow-wow grounds where they met a number of other individuals. The drinking continued at that location until the party moved on to the Papakee residence about 2:30 or 3 A.M.

At the Papakee residence defendant became involved in an argument with Vincent Lasley, the victim, and his brother Gordon Lasley. Initially, the argument apparently involved only defendant and Gordon Lasley and that argument subsided when Gaylord

Bear, a guest in the Papakee home, intervened. Shortly thereafter, defendant left the Papakee home.

According to Bear's testimony, defendant returned approximately 30 minutes later, carrying an object wedged beneath his belt and concealed under his shirt. At defendant's request, Bear felt the object (a gun) and defendant then laughed and told Bear he was "going to fix somebody". An altercation ensued in the Papakee's dining room between defendant and Gordon Lasley, but Bear took Gordon Lasley out of the house and away from the defendant.

Several minutes later Bear observed defendant threatening Vincent Lasley by pointing a pistol at his throat. Vincent then was quoted as saying, "You can't shoot me, I'm your buddy. Pull the trigger. You can't kill me." Defendant thereupon pulled the trigger, fatally shooting Vincent Lasley through the neck. Clyde Papakee, who had been abed, then came into the living room, took the weapon away from the defendant and placed him upon a chair where he remained until Officer Wanatee and Deputy Sheriff McBride arrived at approximately 6 A.M. McBride took defendant into custody but did not at that time advise him of his constitutional rights.

A true information charging defendant with murder was filed on February 25, 1974. Following the entry of defendant's plea, trial was set for May 13. Notice of additional testimony was served on defendant on May 3, and on May 8 defendant's counsel moved for a continuance, asserting he had not had sufficient time to prepare a defense particularly in view of the filing of the notice of additional testimony. The motion for continuance was overruled.

Several pretrial motions were filed by defendant, including a motion to suppress alleging statements by defendant to Deputy McBride were made before defendant had been properly advised of his right to remain silent, and an application for psychological and psychiatric examination alleging defendant had been in a coma for a month

and a half in 1970 following an automobile accident. Ruling on the motions was deferred by the court until trial. Trial commenced on May 13, 1974 and on May 14 trial court overruled the motion to suppress the three incriminating statements volunteered by defendant, and also overruled the motion for psychiatric examination, noting defendant had already been examined by the psychiatric staff at Iowa City and the report of the examination did not indicate a need for further evaluation. In its ruling the court indicated defendant could obtain other psychiatric evaluation but that the trial would not be delayed pending the outcome thereof. Following the disposition of plaintiff's pretrial motions, the trial proceeded to conclusion. The jury subsequently returned a verdict finding defendant guilty of second degree murder.

The following issues are presented for review in this appeal:

a) Whether trial court had subject-matter jurisdiction in this case over the crime of murder committed by an Indian upon another Indian in "Indian Country".

b) Whether the State failed to prove venue when it presented no evidence the crime occurred in the county of Tama, Iowa.

c) Whether the trial court's refusal to grant defendant's motion for a continuance after defense counsel advised the court he was not prepared was an abuse of discretion or denied defendant his constitutional rights to effective assistance of counsel and a fair trial.

d) Whether the trial court erred in denying the defendant's application for psychological and psychiatric examination and in failing either to conduct any inquiry into defendant's competency to stand trial or to conduct a presentence psychiatric review.

e) Whether three incriminating statements made by the defendant while intoxicated were voluntary.

f) Whether the trial court erred in admitting into evidence an admission secured after the defendant told the investigating offi-

cers that he did not wish to make a statement.

I. With regard to the first issue presented for review, the State argues defendant waived the right to challenge the subject-matter jurisdiction of the trial court because he failed to declare his Indian status and that of his victim at trial.

■ We are not persuaded by the State's argument defendant's failure to declare his Indian status and that of his victim at trial would preclude review of the subject-matter jurisdiction of the court and incline to the view the issue achieves reviewable dimensions from persuasive inferences as to defendant's Indian status and that of his victim. We are therefore squarely presented with the question whether trial court had subject-matter jurisdiction over this case involving the murder of one Indian by another Indian on the Tama Indian Settlement. Resolution of that question requires an inquiry into several statutes which define criminal jurisdiction over crimes committed by Indians in "Indian Country".

II. We have been favored with lengthy briefs directed to the issue of trial court's subject-matter jurisdiction in this case. The briefs are in large part directed to the history of the Sac and Fox Indians and the interplay of federal and state law defining criminal jurisdiction over them. While much of the information contained in the briefs provides valuable background on the question whether trial court had subject-matter jurisdiction over the instant case, we conclude the answer to that question must ultimately turn on the construction given an Act passed by Congress in 1948 conferring jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation.

■ In arguing trial court lacked subject-matter jurisdiction in this case, defendant relies in the main on 18 U.S.C.A. § 1153, which is referred to generally as the Federal Major Crimes Act. That statute provides:

"Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder . . . within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

Section 1153 of 18 U.S.C.A. has been construed to vest exclusive jurisdiction over the crimes specified in the statute in the courts of the United States. United States v. Kagama, 118 U.S. 375, 6 S.Ct. 1109, 30 L.Ed. 228. "Indian Country" within the meaning of the term used in 18 U.S.C.A. § 1153 is defined in 18 U.S.C.A. § 1151. The application of the "Indian Country" definition does not depend upon the manner in which the land in question was acquired, but rather on whether such land has been, as was the Tama Indian Settlement in this case, set apart for the use and occupancy of Indians. See United States v. McGowan, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410. We conclude the Tama Indian Settlement meets the statutory definition of "Indian Country" as construed by the courts.

While the State advances several arguments for the proposition the trial court had subject-matter jurisdiction over this case, the only argument presented warranting consideration here is based on a statute enacted by Congress in 1948. That statute, chapter 759, 62 Stat. 1161 (80th Cong., 2d Sess.), provides:

"Ch. 759. AN ACT . . . That jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in the State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian reservation: Provided, however, That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations."

Statutory provisions nearly identical to chapter 759 grant criminal jurisdiction to Kansas and North Dakota. See 18 U.S.C.A. § 3243 and Public Law 394, enacted May 31, 1946, 60 Stat. 229. See also State v. Lohnes, 69 N.W.2d 508 (N.D.1955).

The ultimate issue presented here is whether the Act last cited conferred on the State of Iowa jurisdiction over *all* crimes committed by Indians on the Tama Indian Settlement. Defendant argues the Act merely conferred on the State jurisdiction over crimes not specified in 18 U.S.C.A. § 1153, reserving to the courts of the United States jurisdiction exclusive of the states over the crimes there specified. Conversely, the State argues chapter 759 conferred on the states exclusive jurisdiction over those crimes not specified in 18 U.S.C.A. § 1153, and *concurrent* jurisdiction over all crimes there specified.

Chapter 759 is a broad grant of criminal jurisdiction to the State of Iowa. The language immediately preceding the proviso confers on the State criminal jurisdiction over offenses committed by or against Indians on the Sac and Fox Reservation "to the same extent" as its courts have criminal jurisdiction generally. Inasmuch as there can be no question but that in 1948 as now the reach of Iowa courts exercising general criminal jurisdiction extended to such crimes as murder, it seems clear the language immediately preceding the proviso in chapter 759, standing alone, would operate to vest subject-matter jurisdiction in Iowa courts over offenses such as the one involved in this case.

In suggesting otherwise, defendant relies heavily on the proviso contained in chapter 759. He contends the proviso operates to except from the broad grant of jurisdiction conferred on the State by the first part of the statute, crimes including murder specified in the Federal Major Crimes Act. Those crimes, he insists, remain within the exclusive jurisdiction of the federal courts.

■ The clear language and plain meaning of chapter 759 lend no real support to defendant's position. While the proviso upon which he relies expressly reserves jurisdiction over certain crimes in the federal courts, it contains no language subject to a construction depriving the State of the general jurisdiction conferred in the first part of the statute over the same crimes. Reading the proviso together with the rest of chapter 759, we view the statute as granting the State exclusive jurisdiction over crimes not specified in the Federal Major Crimes Act and concurrent jurisdiction over the ten crimes enumerated in that Act. It necessarily follows from this reading of the statute that trial court had subject-matter jurisdiction in the instant case.

■ We therefore conclude and hold defendant's attack on the subject-matter jurisdiction of the Iowa court in this case is without merit.

■ III. Criminal actions must be tried in the county in which the crime was committed. Section 753.2, The Code, 1973. Venue is a jurisdictional fact and an essential element of the State's case which must be established beyond a reasonable doubt. State v. Warren, 212 N.W.2d 509, 512 (Iowa 1973); State v. Wardenburg, 261 Iowa 1395, 158 N.W.2d 147, 151–152. Defendant here contends venue in Tama County was not established in the instant case and that his conviction must therefore be reversed. The State contends defendant waived his right to challenge venue by failing to demur to the information filed against him and further argues venue was established by circumstantial evidence.

■■ We note preliminarily that where a defendant attacks his conviction on the ground venue was not established, it is unnecessary to show that he demurred to the information in order for error to be preserved on appeal. See State v. Warren, *supra.* Moreover, there is in our judgment considerable evidence in the record from which it could be reasonably found the shooting in question took place at the Papakee residence on the Mesquakie Indian

Settlement in Tama County. This sufficed to establish venue. State v. Hackett, 200 N.W.2d 493 (Iowa 1972); State v. Hackett, 197 N.W.2d 569, 570–571 (Iowa 1972); State v. Conley, 176 N.W.2d 213, 215 (Iowa 1970). We therefore hold trial court did not err in overruling defendant's motion for directed verdict grounded on his claim venue was not established.

IV. On May 8, 1974 only five days before the case was set for trial, counsel for defendant filed a motion for a continuance, asking for an additional week to ten days to prepare his defense. Oral argument on the motion was heard on the same date. In support of his motion, defense counsel referred to the fact minutes of additional testimony had been filed shortly before and to his own belated efforts in preparing for trial. Trial court overruled the motion, noting it was his responsibility to see that criminal matters were processed on schedule and observing that the new evidence referred to in the notice of additional testimony was not necessarily relevant to the defense. Trial court further observed defense counsel had neglected his responsibility to employ discovery methods in the two and a half month period following his appointment.

The grant or refusal of a continuance lies within the sound discretion of the trial court. Section 780.2, The Code, 1973; Rule 183, Rules of Civil Procedure; State v. Johnson, 219 N.W.2d 690, 696 (Iowa 1974); State v. Berenger, 161 N.W.2d 798, 802 (Iowa 1968). This case does not involve a belated appointment of counsel. It involves dilatory preparation by counsel. Generally, continuances will not be granted for a want of defense preparation in the absence of a showing of good excuse. 17 Am.Jur.2d, Continuance, § 28, pp. 147–148; 17 C.J.S. Continuances, § 22, p. 393. We observe defense counsel did not accompany his motion with affidavits establishing prior diligent effort, specific evidence sought, or a reasonable basis for believing the evidence could be procured, and therefore did not comply with rule 183(b), R.C.P.

Appellate counsel asserts incompetency of trial counsel as a sub-issue necessitating reversal, but does not separately allege error occurred in the course of the trial on that basis. The due process right of defendant to effective assistance of counsel is not applicable where there is no problem of absent witnesses or difficult issues justifying a delay. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921; Stamps v. United States, 387 F.2d 993, 995 (8 Cir. 1967); Ray v. United States, 197 F.2d 268, 271 (8 Cir. 1952); Orcutt v. State, 173 N.W.2d 66, 71 (Iowa 1969).

Trial court did not abuse its discretion in overruling defendant's motion for continuance.

V. On May 10, 1974 counsel for defendant filed application for a psychiatric examination of defendant and asked that proceedings be stayed pending the outcome of an evaluation following such examination. Hearing was held immediately prior to the commencement of trial on the morning of May 13, and trial court overruled the application. Trial court later amplified its ruling to reflect the fact the court had previously authorized and aided in scheduling an examination of defendant at state expense and that any further examination would also be paid for by the state but that trial would not be delayed.

A defendant in a criminal case has an absolute right to a three-day period in which to prepare a defense. See section 780.3, The Code, 1973. After the expiration of such statutory period, the granting of a continuance is within the sound discretion of the trial court. State v. Johnson, supra; State v. Moore, 217 Iowa 872, 251 N.W. 737. In the exercise of sound discretion, trial court must protect defendant's constitutional right to effective assistance of counsel, which of necessity encompasses adequate time for preparation of a defense. Stamps v. United States, supra; Ray v. United States, supra. The record shows trial counsel in the present case had ample time to

interview the defendant and to investigate possible defenses. Trial counsel was appointed only two days following defendant's arrest. We conclude trial court acted well within a proper latitude of discretion in denying defendant's request for a continuance to permit psychiatric evaluation.

■ VI. Defendant argues here trial court should have ordered a hearing under the provisions of § 783.1, The Code, 1973 to determine defendant's competence to stand trial and his capacity to appreciate the charge against him and aid in his own defense. Defendant's trial counsel did not at any time request a hearing under the provisions of § 783.1, The Code; in fact, the record reflects that defendant's counsel at the hearing on the application for continuance stated he was not concerned about defendant's capacity to understand and participate in the proceedings. Defendant argues here that the court should have ordered such a hearing on its own motion. Defendant does not however point to any circumstance either before or during trial which could have raised a reasonable doubt as to defendant's ability to stand trial, to appreciate the charge against him, or to aid in his own defense. State v. Thomas, 205 N.W.2d 717, 719 (Iowa 1973); Hickey v. District Court of Kossuth County, 174 N.W.2d 406, 410 (Iowa 1970).

We see no merit in defendant's contention in this respect.

VII. Defendant next contends trial court erred in failing to conduct a psychiatric examination prior to imposing sentence, basing this complaint upon the fact the trial judge had indicated before trial that in the event defendant was convicted a psychiatric examination could be made as part of the presentence investigation. Such comment was made by the court at the time the application for psychiatric examination was submitted and ruled upon.

■ The trial court had no statutory obligation to order a psychiatric examination as a prelude to imposing sentence.

Sections 789A.3, 789A.4, The Code. Section 789A.4 in part provides:

"With the approval of the court, a physical examination of the defendant may be ordered, or the defendant may be committed to a psychiatric facility for an evaluation of his personality and mental health. The results of any such examination shall be included in the report of the investigator."

Trial court had the benefit of an extensive presentence investigation report prior to imposing sentence, as is required by section 789A.3, The Code. The trial judge followed the recommendations of the presentence investigator and fixed a sentence at fifty years in keeping with the recommendation of the investigator that neither the maximum nor the minimum sentence be imposed.

The sentencing procedure was handled fairly and trial court did not err by determining not to order a presentence psychiatric examination and evaluation of defendant.

VIII. Defendant next contends trial court erred in admitting three incriminating statements made by the defendant on the grounds the State failed to prove such statements were voluntary.

The first statement was made when defendant was leaving the Papakee residence in the company of Deputy Sheriff McBride, at which time he turned to the members of the Indian community assembled in the Papakee home and said to them, "I'll see you in ten years". The second statement was made while defendant was in the deputy's car during the journey from the Papakee home to the sheriff's office, at which time defendant said, "I'm not really sorry". The third statement was made while Deputy McBride was engaged in a telephone conversation with an agent of the Bureau of Criminal Investigation. During that conversation McBride, in response to the agent's question, said he did not know what weapon was used in the killing but thought it was either a .38 or .45 caliber revolver,

whereupon defendant volunteered, "No, it was a .44 magnum." A fourth statement made in a doctor's office when the defendant allegedly said, "He asked me to shoot him and so I did" was found by the court to be inadmissible.

Defendant argues that the three statements which were not excluded as the result of the court's ruling on his pretrial motion to suppress should not have been admitted at trial because: 1) the statements were involuntary because of defendant's intoxication; 2) they were made before defendant was given the so-called *Miranda* warnings; and 3) the third statement was a result of "subtle interrogation".

At the suppression hearing, Deputy McBride admitted that he had on one occasion told trial counsel's father and associate that defendant was "drunk" when he was arrested. The record also shows McBride made a similar comment to Rick Logsdon, who had been retained as an investigator by defendant's counsel pursuant to court authority. A blood specimen taken from defendant two hours after his arrest indicated a blood alcohol content of .16%. We follow the rule that proof of intoxication goes to the weight and credibility to be accorded incriminating statements rather than to the admissibility of the same. State v. Hiatt, 231 Iowa 655, 659–660, 1 N.W.2d 734, 736; State v. Feltes, 51 Iowa 495, 497, 1 N.W. 755, 757. See also State v. Rank, 214 N.W.2d 136, 139 (Iowa 1974), where we dealt with statements made while under the influence of a self-administered drug. Generally, this is the rule in other jurisdictions. 29 Am.Jur.2d, Evidence, § 577 at 635. Intoxication to the extent of incoherence or "mania" is recognized as an exception to the general principle and as grounds for exclusion on the basis of either involuntariness or unreliability. See Britt v. Commonwealth, 512 S.W.2d 496 (Ky.App. 1974); State v. Scandrett, 468 P.2d 639, 641–642 (Utah 1970); People v. Schompert, 19 N.Y.2d 300, 226 N.E.2d 305, 307, 279 N.Y.S.2d 515 (1967), cert. den. 389 U.S. 874, 88 S.Ct. 164, 19 L.Ed.2d 157. See also citations at 69 A.L.R.2d 369–370.

Irrespective of any showing of intoxication the record indicates defendant was able to read aloud to the sheriff the *Miranda* warnings which had been given him and to assert his right to remain silent. There is no evidence he was intoxicated to the extent of "mania" or incoherence. We therefore conclude and hold that trial court correctly applied the foregoing general rule in holding defendant's statements were admissible despite evidence of his intoxication.

Defendant is correct in his contention that failure to give *Miranda* warnings to one in custody is a factor to be employed in determining the voluntariness of statements made. State v. Cooper, 217 N.W.2d 589, 596 (Iowa 1974). He admits however that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 is not totally controlling where a defendant is not under interrogation.

The transcript of the suppression hearing shows that the first statement defendant made which the court refused to suppress, namely, his comment "I'll see you in ten years", was not made to a police officer, but voluntarily to members of the Indian community gathered in the Papakee residence as defendant was leaving with Deputy McBride. The second statement, "I'm not really sorry" was unprompted and was not provoked by any interrogation by the police officers. On this record we find nothing in *Miranda* or elsewhere supporting defendant's contention his first two statements were inadmissible because they were involuntary. The statements were in fact spontaneous, uncoerced comments volunteered by defendant outside the scope of any police interrogation. Trial court did not err in refusing to exclude the statements on the grounds defendant urges here.

After defendant had been informed of his rights under *Miranda* and stated that he did not wish to make any statements, no interrogation was pursued. While defend-

ant was present in the sheriff's office shortly after he had been given the *Miranda* warnings, Deputy McBride made a telephone call to Mr. Warren Stump at the office of the Bureau of Criminal Investigation in Des Moines. The following is excerpted from the transcript:

Q. During the course of your telephone conversation with Mr. Stump, did Mr. Youngbear make any statements?"

A. Yes, he did.

Q. Would you explain the situation or the circumstances of that statement?

A. Yes. He was—I was talking to Mr. Stump, and he asked me what weapon was used.

Q. You're referring to Mr. Stump asking?"

A. Yes. I was talking to Stump. He said—I told him that I didn't really know. It was a large, either .38 or .45 revolver. And Mr. Youngbear spoke up and said it was a .44 magnum.

Q. Was that in reply to any question from you or—

A. No, it was not.

Q. —inquiry from you. Do you know whether or not Mr. Stump heard that?

A. Yes. He indicated he did.

Defendant contends the phone call was a kind of trickery or "subtle interrogation". This contention strains our credulity. We hold the trial court was correct in refusing to exclude the third statement on the ground defendant asserts.

▇ IX. The final issue presented for review derives from defendant's contention trial court erred in failing to give a theory of the defense instruction.

Instruction 18 submitted to the jury reads as follows:

"INSTRUCTION No. 18

"Evidence has been introduced on the subject of defendant's intoxication. The law provides that no amount of voluntary intoxication can entirely excuse a homicide and thereby entitle a slayer to an acquittal.

"You may consider this evidence, however, along with all the other evidence in the case, in determining whether or not the State has established beyond a reasonable doubt the defendant acted upon the occasion charged willfully, deliberately and premeditatedly in connection with the charge of murder in the first degree.

"In the event you find the defendant not guilty of murder in the first degree and are deliberating upon the guilt or innocence of the defendant under the charge of murder in the second degree you may consider this evidence, along with all the other evidence in the case, in determining whether or not the State has established beyond a reasonable doubt the defendant acted upon the occasion charged with malice aforethought.

"In the event you find the defendant not guilty of murder in the first degree and not guilty of murder in the second degree and are deliberating upon the guilt or innocence of the defendant under the included charge of manslaughter, this evidence is not to be considered by you in connection therewith."

Instruction 18 is a modified version of Uniform Jury Instruction No. 501.18, tailored to exclude the much controverted section on burden of proof. See State v. Buchanan, 207 N.W.2d 784, 787 (Iowa 1973). Instruction 18 adequately treated the permissible findings of the jury where there was evidence of incapacitating intoxication. State v. Hall, 214 N.W.2d 205, 209 (Iowa 1974); State v. Pierce Wilson, 166 Iowa 309, 322, 144 N.W. 47, 52, on reh. 147 N.W. 739.

Defendant argues trial court should have counterbalanced Instruction 18 which he contends favored the prosecution by giving an instruction which succinctly set forth the defendant's theory of the case, *i. e.*, that defendant was so intoxicated as to be un-

able to deliberate and premeditate the killing of Vincent Lasley, or to be capable of performing the act of killing Lasley with malice aforethought. We conclude Instruction 18 adequately informed the jury with respect to the issue of claimed intoxication.

Instruction 15 submitted to the jury read in pertinent part as follows:

"Before defendant can be found guilty of the crime of murder in the first degree . . . the State must establish beyond a reasonable doubt . . . :

"1. . . .

"2. . . .

"3. That such action of the defendant was done by him with malice aforethought and willfully, deliberately and premeditatedly and with a specific intent on the part of the defendant to kill Vincent Lasley."

At the conference between court and counsel on instructions, defendant's trial counsel requested that paragraph 3 be amended by the addition after the above quoted portion of a semi-colon and the following language: "and that the defendant was not so intoxicated as to be capable of killing Vincent Lasley with malice aforethought and willfully, deliberately and premeditatedly and with a specific intent to kill."

In Instruction 16, which served to instruct the jury on what it was required to find before the defendant could be found guilty of the crime of murder in the second degree, the court instructed in subparagraph 3:

"3. That such action of the defendant was done by him with malice aforethought."

Defense counsel requested that there be added to the quoted language "and that the defendant was not so intoxicated as to be capable of performing the act with malice aforethought".

Defendant's request for amendment of both Instructions 15 and 16 was denied. We believe trial court adequately instructed the jury on defendant's theory of the defense of intoxication. We find no merit in his position otherwise.

Defendant was accorded a fair trial. We find no reversible error and affirm.

Affirmed.