**Ellsworth YOUNGBEAR, Petitioner,**

v.

**Lou V. BREWER, Warden of the Iowa State Penitentiary at Fort Madison, Respondent.**

No. C 75–62.

United States District Court, .N. D. Iowa, Cedar Rapids Division.

June 25, 1976.

---

808

Robert N. Clinton, Iowa City, Iowa, Charles A. Pulaski, Jr., John M. Thompson, Iowa City, Iowa, for petitioner.

Richard C. Turner, Atty. Gen. of Iowa, Thomas D. McGrane, Asst. Atty. Gen., Des Moines, Iowa, for respondent.

Evan Hultman, U. S. Atty., N. D. Iowa, Waterloo, Iowa, Herbert Becker, Atty., Dept. of Justice, Land and Natural Resources Div., Washington, D. C., for amicus curiae U. S.

A. John Wabaunsee, Richard B. Collins, Native American Rights Fund, Boulder, Colo., Merle L. Royce, Marshalltown, Iowa, for amicus curiae Sac and Fox Tribe of the Mississippi In Iowa.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on petitioner's resisted motion for partial summary judgment, filed January 27, 1976.

Petitioner Ellsworth Youngbear commenced this action for writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that he is being held in custody by the State of Iowa in violation of the United States Constitution. Specifically, petitioner avers that he was denied certain constitutional rights during the course of his trial and conviction for second degree murder in the Iowa District Court in and for Tama County. Petitioner moves for summary judgment with respect to one of these contentions only, to-wit, that the Iowa District Court lacked subject matter jurisdiction over the offense charged.[1]

Petitioner was convicted of second degree murder for the slaying of one Vincent Lasley on the Sac and Fox Indian Settlement in Tama County, Iowa. The Iowa Supreme Court affirmed the conviction, specifically rejecting *inter alia* the contention of lack of subject matter jurisdiction. *State v. Youngbear*, 229 N.W.2d 728 (Iowa 1975). A petition for writ of certiorari was sought and denied. Exhaustion of all available state remedies appears to have been completed within the meaning of 28 U.S.C. § 2254(b).

■ Summary judgment may be granted in an action for writ of habeas corpus if the requirements of Rule 56, FRCP, are other-

---

1. Of course, granting the writ on this ground would render consideration of other alleged constitutional infirmities during trial moot.

wise satisfied. *Bowdidge v. Lehman,* 252 F.2d 366, 368 (6th Cir. 1958); *In re McShane's Petition,* 235 F.Supp. 262, 266 (N.D.Miss.1964); *see* Rule 81(a)(2), FRCP; *Schnepp v. Hocker,* 429 F.2d 1096, 1098 (9th Cir. 1970); *Kleinhans v. Cady,* 314 F.Supp. 1276, 1278 (W.D.Wis.1970).

Under Rule 56, FRCP, summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Sartor v. Arkansas Natural Gas Corp.,* 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944); *Chicago & Northwestern Ry. Co. v. Hospers Packing Co., Inc.,* 363 F.Supp. 697, 698 (N.D.Iowa 1973).

No genuine issue as to any material fact remains concerning the jurisdictional question upon which summary judgment is sought. The record clearly establishes, and the Iowa Supreme Court · so found, 229 N.W.2d at 732, that the defendant and the deceased victim were full-blooded Sac and Fox Indians. There is no dispute that the killing occurred on the Sac and Fox Indian Settlement near Tama, in Tama County, Iowa.

 This settlement is "Indian Country" within the definition of 18 U.S.C. § 1151.[2] The determination of whether lands are considered "Indian Country" does not turn on the label used in designating them, *United States v. McGowan,* 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1938), nor on the manner in which the lands in question were acquired. *Seymour v. Superintendent,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962); *United States v. Martine,* 442 F.2d 1022, 1023 (10th Cir. 1971). Rather the test is whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples. *See McGowan, supra* 302 U.S. at 538, 58 S.Ct. 286; *Martine, supra* at ·1023–1024.

This court concurs with the Iowa Supreme Court, 229 N.W.2d at 732, that under the principles espoused above, the Sac and Fox Settlement in Tama County meets the statutory definition of "Indian Country."

 Thus the undisputed facts establish that the alleged slaying of an Indian was committed by another Indian within Indian Country. The question posed is whether the State of Iowa has jurisdiction to try the accused for murder in the courts of that State. This is solely a legal question, and it is the view of the court that petitioner is entitled to judgment as a matter of law.

The State of Iowa and the Iowa Supreme Court relied upon the provisions of Act of June 30, 1948, Ch. 759, 62 Stat. 1161, Pub.L. No. 846, as a grant of jurisdiction to the courts of Iowa over the crime of murder. That statute reads:

> An Act . . . That jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in that State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian reservation: *Provided, however, That nothing · herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.* (Emphasis added.)

The Iowa High Court viewed the language of Pub.L. 846 as clear and unambiguous, and applied what it considered the plain meaning of the statute without resorting to legislative history or other rules of statutory interpretation. The court noted that in 1948, the date of enactment of Pub.L. 846, as well as thereafter, the State courts of Iowa exercised general criminal jurisdiction within the State over the crime

---

**2.** 18 U.S.C. § 1151 provides in relevant part:
*Indian country defined*
 Except as otherwise provided in sections 1154 and 1156 of this title, the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the is-

suance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state . . . .

of murder. *See* Ch. 690, Code of Iowa (1973). The court concluded that the State of Iowa was thus granted criminal jurisdiction over all offenses, including murder, with the proviso reserving *concurrent* jurisdiction in the Federal government over certain offenses. 229 N.W.2d 732–733.

A general rule of statutory construction is that a statute which is unambiguous on its face and capable of only one meaning is to be given that meaning, and extrinsic aids to interpretation need not be utilized. *Land O'Lakes, Inc. v. United States,* 514 F.2d 134, 140 (8th Cir. 1975); *United Shoe Workers of America, AFL–CIO v. Bedell,* 165 U.S.App.D.C. 113, 506 F.2d 174, 178–179 (1974); *Kansas City v. Federal Pacific Electric Co.,* 310 F.2d 271, 273–274 (8th Cir. 1962), *cert. denied,* 371 U.S. 912, 83 S.Ct. 256, 9 L.Ed.2d 171. The legislative will is the controlling factor, and that will is generally to be determined from the language of an unambiguous statute, giving the terms their ordinary and customary meaning. *Malat v. Riddell,* 383 U.S. 569, 571–572, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966); *Bowie v. City of Columbia,* 378 U.S. 347, 362–363, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *United States v. Freeman,* 473 F.2d 7, 9 (8th Cir. 1973).

Here, however, it is the view of the court that the language of Pub.L. 846 is not clear and unambiguous, and that a proper interpretation of the statute would lead to a result contrary to that reached by the Iowa Supreme Court. Of primary concern to the court is the impact of 18 U.S.C. § 1153, the Federal Major Crimes Act, on the interpretation to be given the proviso in Pub.L. 846, and the concomitant effect on interpreting the statute as a whole.

The Federal Major Crimes Act, as amended, 18 U.S.C. § 1153, provides in relevant part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, rape, carnal knowledge of any female, not his wife, who had not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to kill, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

This statute was initially passed[3] in response to the decision in *Ex Parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), wherein the United States Supreme Court declared that the jurisdiction of the United States Courts, being courts of limited jurisdiction, had not been extended to crimes committed by an Indian against another Indian of the same tribe on an Indian reservation. Shortly after its enactment, the Federal Major Crimes Act was interpreted as granting the federal courts *exclusive* jurisdiction over the crimes enumerated therein. *United States v. Kagama,* 118 U.S. 375, 377–378, 6 S.Ct. 1109, 30 L.Ed. 228 (1886). *Accord, Williams v. Lee,* 358 U.S. 217, 220 n. 5, 79 S.Ct. 269, 3 L.Ed.2d 251 (1958); *Seymour, supra* 368 U.S. at 352, 359, 82 S.Ct. 424; *Keeble v. United States,* 412 U.S. 205, 209–210, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *City of New Town, North Dakota v. United States,* 454 F.2d 121, 123 (8th Cir. 1972).

The proviso appended to Pub.L. 846 states "that nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations." Clearly this clause refers to the crimes defined in the Federal Major Crimes Act. As indicated above, jurisdiction over these

---

**3.** Act of March 3, 1885, Ch. 341, § 9, 23 Stat. 385. Section 9 of this Act conferred jurisdiction upon the Territorial Courts for enumerated offenses committed by an Indian within a territory whether within or without an Indian reservation, but within a State, jurisdiction was granted to the federal courts only where the crime was committed inside the boundaries of an Indian reservation.

offenses under 18 U.S.C. § 1153 is vested exclusively in the Federal courts.

Therein lies the ambiguity in Pub.L. 846. The first section of the statute purports to grant general criminal jurisdiction to the courts of Iowa to the same extent that criminal jurisdiction is exercised elsewhere in the State. But that jurisdiction is then limited by the proviso, which prohibits the Act from depriving the United States courts of jurisdiction exercised under 18 U.S.C. § 1153. The State argues that the proviso only retains concurrent jurisdiction in the Federal courts over the offenses enumerated in § 1153. Petitioner contends that since the jurisdiction exercised by the Federal courts under § 1153 was exclusive, the proviso in Pub.L. 846 reserves exclusive jurisdiction over the major crimes in the United States Courts.

Three lines of authority support petitioner's contention: (1) interpretation of the statutory language in light of applicable maxims of construction; (2) legislative history of the statute; and (3) comparison with language used in other statutes where Congress did abrogate the exclusive jurisdiction granted by § 1153. The function of the court in the instant case is a cognitive one, to ascertain the meaning of the statute as intended by Congress, and how that meaning relates to the controversy at bar. *See Philbrook v. Glodgett,* 421 U.S. 707, 713, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); R. Dickerson, *The Interpretation and Application of Statutes* 14–33 (1975).

The starting point in the search for legislative intent is of course the pertinent language of the statute itself. *Dupuy v. Dupuy,* 511 F.2d 641, 642 (5th Cir. 1975); *March v. United States,* 165 U.S.App.D.C. 267, 506 F.2d 1306, 1313 (1974). The phraseology of Pub.L. 846 grants general criminal jurisdiction to the courts of Iowa over offenses "committed by or against Indians on the Sac and Fox Reservation . . . Provided, however, That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian

reservations." The jurisdiction of the Federal courts over the offenses defined in 18 U.S.C. § 1153, to which the above proviso refers, had been construed to be exclusive since the 1886 decision in *Kagama, supra,* and it must be assumed that Congress was well aware of the existing rules of law with regard to the subject matter when it enacted Pub.L. 846. *Federal Pacific Electric, supra* at 275.

Thus the prohibition against depriving the Federal courts of jurisdiction would appear to mean, in the context of this particular subject, that the Federal courts were to maintain their exclusive jurisdiction over the offenses enumerated in 18 U.S.C. § 1153. Considering Pub.L. 846 as a whole then, the reading most consistent with the language employed therein when viewed in its proper context is that it grants jurisdiction generally to the State of Iowa over crimes committed by or against Indians on the Reservation, with the exception of those crimes listed in 18 U.S.C. § 1153, over which the Federal courts would retain exclusive jurisdiction.

This interpretation is also the only one which is consistent with two principles of statutory construction to be employed when dealing with statutes which regulate the affairs of Indians. First the interpretation proffered by the State would operate as an implicit repeal of one aspect of § 1153, the exclusivity of Federal jurisdiction over the offenses specified therein.

In *Kagama, supra,* 118 U.S. at 383–384, 6 S.Ct. 1109, the Court recited as reasons for the enactment of the Federal Major Crimes Act the special relationship of Indians to the United States, together with their lack of allegiance to the States and indeed open hostilities often encountered in the latter. With respect to the conduct of Indians on Indian reservations, the well-preserved rule, initially based on a concept of Indian sovereignty, has been to leave Indians free from State jurisdiction. *McClanahan v. Arizona State Tax Comm'n,* 411 U.S. 164, 168, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *United States v. Erickson,* 478 F.2d 684, 689 (8th

Cir. 1973); *see also Worcester v. Georgia,* 31 U.S. 515, 6 Pet. 515, 8 L.Ed. 483 (1832).

Rigid application of the Indian-sovereignty rule has been modified to allow consideration of the State's legitimate regulatory interests. *McClanahan, supra,* 411 U.S. at 171–173, 93 S.Ct. 1257; *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 147–148, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973). The modern trend has been to avoid dogmatic reliance on platonic concepts, and to turn instead to the applicable treaties and statutes which define the limits of state power. *McClanahan, supra* 411 U.S. at 172, 93 S.Ct. 1257. But in reviewing such treaties and statutes, an interpretation should not be adopted which works an implied repeal of prior treaties or statutes granting a right or privilege to the Indians. *See Menominee Tribe v. United States,* 391 U.S. 404, 412–413, 88 S.Ct. 1705, 20 L.Ed.2d 697 (1968); *Marlin v. Lewallen,* 276 U.S. 58, 68, 48 S.Ct. 248, 72 L.Ed. 467 (1928); *Ex parte Crow Dog, supra* 109 U.S. at 572, 3 S.Ct. 396. Here the rights of the Sac and Fox Tribe to be tried exclusively in Federal court for alleged violations of the Major Crimes Act should not be abrogated absent a clear expression from Congress.

■ A second long-standing policy with regard to statutes governing Indians is that ambiguous statutes should be liberally construed in favor of the Indians and not to their prejudice. *Bryan v. Itasca County,* —— U.S. ——, 96 S.Ct. 2102, 48 L.Ed.2d 710, 44 U.S.L.W. 4832 (1976); *Antoine v. Washington,* 420 U.S. 194, 199–200, 95 S.Ct. 944, 43 L.Ed.2d 129 (1975); *see Menominee Tribe, supra,* 391 U.S. at 406 n. 2, 88 S.Ct. 1705; *Choate v. Trapp,* 224 U.S. 665, 675, 32 S.Ct. 565, 56 L.Ed. 941 (1912). To adopt the view of the State would not only eliminate the historically exclusive stewardship of the

Federal government over major crimes committed by Indians on the Reservation, but would also subject the Sac and Fox to the difficulties of conforming their behavior to the standards of two sovereigns, · and perhaps thereby incur a double prosecution for essentially one offense. *Cf. Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). Such a result is clearly not favorable to the Sac and Fox Tribe, and should only be accomplished by explicit direction from Congress. *See Bryan, supra.*

Legislative history, though not exhaustive, also supports retention of exclusive jurisdiction in the Federal courts over the major crimes. A letter from Mr. Peyton Ford, then assistant to the Attorney General of the United States, indicates that the need for the bill was due to a breakdown in law enforcement on the Reservation, particularly concerning offenses not defined in the Federal Major Crimes Act. H.R.Rep. No. 2356 at 3, 80th Cong., 2d Sess. (1948). Of similar import was a letter ·from Mr. Oscar Chapman, then Undersecretary of Interior. H.R.Rep. 2356 at 3. Both letters were included as well in the Senate Report on the bill. S.Rep. No. 1490, 80th Cong., 2d Sess. (1948). Thus the desirability of conferring criminal jurisdiction to the State of Iowa over crimes committed by Indians on the Reservation was primarily represented to Congress as a remedy for ineffective law enforcement by the Tribe, which had jurisdiction over all offenses *other than* the major crimes set forth in 18 U.S.C. § 1153.

Also pertinent is the legislative history of a statute whose operative language is identical with that of Pub.L. 846 except for the designation of the State of Kansas rather than Iowa. That statute, Act of June 8, 1940, Ch. 276, 54 Stat. 249, Pub.L. 565 (now codified at 18 U.S.C. § 3243),[4] was cited as

---

4. 18 U.S.C. § 3243 provides:
 *Jurisdiction of State of Kansas over offenses committed by or against Indians on Indian reservations*
 Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.
 This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations. .

the model to which Pub.L. 846 could be compared. H.R.Rep. No. 2356 at 3. The original draft of the bill conferring jurisdiction on the State of Kansas, H.R. 3048, did state that *concurrent* jurisdiction was relinquished to the State, and further expressly provided that 18 U.S.C. § 548 (Federal Major Crimes Act as then codified) was modified accordingly. 86 Cong.Rec. 5596, 76th Cong. 3rd Sess. (May 6, 1940). This bill was rejected, and the substituted bill which was subsequently enacted did not contain either the term "concurrent" or the clause modifying the effect of the Federal Major Crimes Act. By deleting this language, the only intent which can reasonably be inferred to Congress was to preserve exclusive Federal jurisdiction over the major crimes.

Evidence of this intent also appears in a letter from Representative W.P. Lambertson, a Kansas congressman whose district was affected by the bill. The letter, appearing in the report of the House Committee on Indian Affairs, H.R.Rep. 1999 at 2, 76th Cong. 3rd Sess. (1940), states that "The Government here relinquishes to the State full jurisdiction over the Indians *for small offenses.*" (Emphasis added.) [5]

Finally, the language of Pub.L. 846, when considered in light of those terms deleted from its predecessor (18 U.S.C. § 3243), and then compared with the language of a statute relinquishing full criminal jurisdiction to certain states, again suggests that Congress did not intent by enacting Pub.L. 846 to abrogate the exclusive jurisdiction then existing under 18 U.S.C. § 1153. The statute conferring complete and full criminal jurisdiction to six states over crimes committed by Indians on Indian reservations, Act of June 15, 1953, ch. 505, 67 Stat. 588, Pub.L. 280, as amended (codified in part at 18 U.S.C. § 1162 and 25 U.S.C. §§ 1321–1326),[6] expressly declares that the provisions of 18 U.S.C. § 1153 shall not be applicable to the areas of Indian Country encompassed by this Act. Ch. 505, § 2(c), 67 Stat. 588 (18 U.S.C. § 1162(c)).

Thus when Congress has modified Federal jurisdiction under 18 U.S.C. § 1153, in this instance by totally eliminating it, the result has been accomplished by unequivocal language. The statute in issue here not only contains no clear expression of an intent to partially or fully abrogate the exclusive Federal jurisdiction under § 1153, but indeed the statutory history of its parent statute indicates that such express language was deleted from the statute.

The jurisdictional question presented by the instant case appears to be one of first impression in the federal courts. Two federal statutes contain similar language to the one at issue here. As noted above, one grants criminal jurisdiction over Indian reservations to the State of Kansas. 18 U.S.C. § 3243. The other relinquished criminal jurisdiction to the State of North Dakota. Act of May 31, 1946, 60 Stat. 229. No federal case construing any of these statutes has been cited by the parties, and the court has been unable to locate any such authority. The case of *State v. Lohnes*, 69 N.W.2d 508 (N.D.1955), a decision by the North Dakota Supreme Court, is not determinative here since the court was not squarely faced with interpreting the Federal statute. Any references to concurrent

---

5. Respondent cites a letter from the then Acting Secretary of Interior which suggests that the bill would grant concurrent jurisdiction over the major crimes. H.R.Rep. 1999, 76th Cong., 3rd Sess. (1940). However, it appears that the letter refers to the original bill, which was drafted by the Interior Department and would have explicitly granted concurrent jurisdiction.

6. The Act as initially passed included only five states: California, Minnesota, Nebraska, Oregon and Wisconsin. Alaska, then a territory, was added by amendment in 1958, Act of August 8, 1958, Pub.Law 85–615, § 1, 72 Stat. 545.

Certain specified reservations were exempted from the otherwise general grant of jurisdiction to the named States. Section 7 of the 1953 Act permitted other States to assume civil and criminal jurisdiction by legislative action. Iowa assumed civil jurisdiction over the Sac and Fox Reservation pursuant to that section. §§ 1.12–1.15, Code of Iowa (1973). Criminal jurisdiction was not assumed, and § 7 of the Act was repealed in 1968. Act of April 11, 1968, Pub.L. 90–284, Title IV, 82 Stat. 78 (25 U.S.C. §§ 1321–1326). Consent of the tribe as well as the State is now required. 25 U.S.C. § 1321.

**814**

jurisdiction were *dicta,* since the court there held the statute ineffective because consent to jurisdiction by the state was not obtained from people of the State itself as required by the Enabling Act and the North Dakota Constitution.

In summary, the court is of the view that the State of Iowa lacked jurisdiction to try the petitioner for the crime of second degree murder in the courts of that State. Accordingly, petitioner's motion should be granted and the writ issued. *Seymour, supra; Erickson, supra.*

It is therefore

ORDERED

1. Motion for summary judgment granted, and Ellsworth Youngbear's application for writ of habeas corpus is granted.

2. Issuance of the writ is stayed for 30 days within which time the State of Iowa may properly file a notice of appeal. Pending the outcome of such an appeal, petitioner Youngbear shall remain in custody. Rule 23(c), FRCrP.

3. If no appeal is filed, issuance of the writ is stayed an additional 15 days, during which time the United States shall indicate to the court in writing whether criminal proceedings will be commenced against petitioner.