STATE of Iowa, Appellee,

v.

Anna Lee BEAR, Appellant,

and

Archie Bear, Appellee.

No. 88–1490.

Supreme Court of Iowa.

March 21, 1990.

Patrick L. Wilson, Marshalltown, for appellant and appellee Bear.

Thomas J. Miller, Atty. Gen., Mark Joel Zbieroski, Asst. Atty. Gen., and Brent Heeren, Co. Atty., for appellee State.

Considered by HARRIS, P.J., and SCHULTZ, LAVORATO, SNELL and ANDREASEN, JJ.

ANDREASEN, Justice.

Archie Bear and Anna Bear are the parents of Barry Bear. They are native Americans, members of the Sac and Fox Tribe of Mississippi in Iowa, and residents of the Tama Indian Reservation. Anna and Archie were each charged with three counts of violating Iowa's compulsory school attendance laws, Iowa Code section 299.1 and 299.6 (1987), by failing to cause Barry to attend school during the 1987–88 school year. Judicial Magistrate John Felts issued citations ordering them to appear on these complaints. Upon the Bears' failure to appear, arrest warrants were issued. They later were charged with contempt. Iowa Code § 665.2(3). Officers of the Tama county sheriff's office attempted to serve the warrants at the Bears' home, but were unsuccessful.

Later that day, the radio operator received a call from Anna Bear. She asked if the radio operator would give the sheriff a message. She said their children were terrorized by the sheriff's two cars coming into the place. She said she did not understand why they were being called in and complained she was not offered a hearing or an attorney. The following exchange took place:

MRS. BEAR: It is illegal in the first place and aah we are going to resist arrest. Tell your deputies that they better keep off this place. We regard them as trespassing.

CATHERINE [Swaim, radio operator]: Okay.

MRS. BEAR: I will not have this again. They did not offer us an attorney, they violated our rights to the inth degree.

CATHERINE: Okay, well I'll leave a note for Mike [Prouty, deputy county sheriff].

MRS. BEAR: I would please get that to your deputies before they have a chance to come out here. I'm home now.

CATHERINE: Uh-huh. Okay.

MRS. BEAR: And before they have a chance to come out here, you tell them they're trespassing. There are loaded guns.

CATHERINE: Okay.

MRS. BEAR: If they try to break in this house.

CATHERINE: Okay.

MRS. BEAR: You darn right there are kids.

CATHERINE: Okay.

MRS. BEAR: And I'll hold em.

CATHERINE: Okay.

MRS. BEAR: Thank you.

CATHERINE: Uh-huh.

Based on this telephone call, the State filed an additional charge of harassment, Iowa Code section 708.7, against Anna Bear.

The judicial magistrate found the Bears guilty of all six charges of violating the compulsory school attendance law and two charges of contempt. The magistrate also found Anna Bear guilty of the crime of harassment, sentencing her to thirty days in jail. The Bears appealed to the district court. *See* Iowa R.Crim.P. 52. The district judge overturned the compulsory school attendance convictions, finding the evidence insufficient to establish that Barry was physically able to attend school on the specific three dates as charged in the complaints. However, the district court affirmed Anna Bear's harassment conviction and the judgments of contempt.

Anna Bear filed an application for discretionary review to challenge her harassment conviction. The State filed an application for discretionary review to challenge the district court's reversal of the compulsory school attendance convictions. We granted both applications for review. *See* Iowa R.Crim.P. 52; Iowa R.App.P. 201–04. The Bears did not file a petition for writ of certiorari challenging the judgments of contempt. Iowa R.App.P. 301.

I. We first consider whether the magistrate had subject matter jurisdiction. Subject matter jurisdiction may be raised at any time. In *State, Department of Human Services v. Whitebreast*, 409 N.W.2d 460, 461 (Iowa 1987), we stated:

Resolution of the controversy can properly be understood only against the backdrop of tribal sovereignty and federal Indian law. Historically, Indian territories were generally deemed beyond the legislative and judicial jurisdiction of state governments. [Cite omitted.] This policy of leaving Indians free from state jurisdiction and control was first articulated by the United States Supreme Court in 1832 when Chief Justice Marshall declared that Indian nations were "distinct political communities, having territorial boundaries, within which their authority is exclusive, and having a right to all the lands within those boundaries, which is not only acknowledged, but guaranteed by the United States." *Worcester v. Georgia*, 31 U.S. (6 Pet.) 515, 557, 8 L.Ed. 483, 499 (1832). "It followed from this concept of Indian reservations as separate, although dependent nations, that state law could have no role to play within the reservation boundaries." *McClanahan v. Arizona Tax Comm'n*, 411 U.S. 164, 168, 93 S.Ct. 1257, 1260, 36 L.Ed.2d 129, 133 (1973).

■ We addressed state subject matter jurisdiction over crimes committed by or against native Americans on the Sac and Fox Indian reservation in *State v. Youngbear*, 229 N.W.2d 728 (Iowa), *cert. denied*, 423 U.S. 1018, 96 S.Ct. 455, 46 L.Ed.2d 390 (1975). In that case we affirmed Youngbear's conviction for second-degree murder for the killing of another Indian on the Tama reservation. The applicable federal statute provided:

That jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in that State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indi-

an reservation: *Provided, however,* That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations. An Act to Confer Jurisdiction on the State of Iowa over Offenses Committed By or Against Indians on the Sac and Fox Indian Reservation, Pub.L. 846, 62 Stat. 1161 (1948) (emphasis in original) (hereinafter Public Law 846). We held the United States gave Iowa exclusive jurisdiction over those crimes not specified in the Federal Major Crimes Act and concurrent jurisdiction over all crimes therein specified. 229 N.W.2d at 733. *See* Federal Major Crimes Act, 18 U.S.C. § 1153.

However, our holding was challenged in federal court. In *Youngbear v. Brewer,* 415 F.Supp. 807 (N.D.Iowa 1976), *aff'd,* 549 F.2d 74 (8th Cir.1977), the federal district court granted Youngbear's application for writ of habeas corpus. The court concluded that, since the jurisdiction of the federal courts under 18 U.S.C. section 1153 was exclusive, the state's exercise of *concurrent* jurisdiction over the offenses specified therein would deprive the federal courts of their *exclusive* jurisdiction.

Upon reexamination of the applicable statutes, we agree with the federal courts. Consistent with their analysis of Public Law 846, we examine the nature of federal jurisdiction over compulsory school attendance of native Americans.

■ Congress has given the Secretary of the Interior authority to secure the school attendance of native American children:

The Secretary of the Interior is authorized to make and enforce such rules and regulations as may be necessary to secure the enrollment and regular attendance of eligible Indian children who are wards of the government in schools maintained for their benefit by the United States or in public schools.

25 U.S.C. § 282. Pursuant to this authority, the Secretary has declared:

Any Indian who shall, without good cause, neglect or refuse to send his children or any children under his care, to

school, shall be deemed guilty of an offense and upon conviction thereof shall be sentenced to labor for a period not to exceed 10 days.

25 C.F.R. § 11.65 (1989). The Secretary has declared further:

Any Indian who shall willfully contribute to the delinquency of any minor shall be deemed guilty of an offense and upon conviction thereof shall be sentenced to labor for a period not to exceed 6 months.

25 C.F.R. § 11.66. Another regulation observes: "Compulsory school attendance of Indian children is provided for by law." 25 C.F.R. § 31.4.

Enforcement of state compulsory school attendance laws is addressed at 25 U.S.C. § 231:

The Secretary of the Interior, under such rules and regulations as he may prescribe, shall permit the agents and employees of any State to enter upon Indian tribal lands, reservations, or allotments therein ... (2) to enforce the penalties of State compulsory school attendance laws against Indian children, and parents, or other persons in loco parentis except that this subparagraph (2) shall not apply to Indians of any tribe in which a duly constituted governing body exists until such body has adopted a resolution consenting to such application.

In 1937, the Sac and Fox Tribe adopted a constitution and bylaws pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. section 476. *See Sac and Fox Tribe of Mississippi in Iowa v. Licklider,* 576 F.2d 145, 148 (8th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978). The parties have stipulated "the duly constituted governing body of the tribe has not adopted a resolution consenting to the application of 25 U.S.C. Section 231(2)." We note that two cases which apply section 231 indicate tribal consent to the application of state compulsory school attendance laws is a prerequisite to state court subject matter jurisdiction over violation of those laws. *See State ex rel. Adams v. Superior Court for Okanogan*

*County,* 57 Wash.2d 181, 188, 356 P.2d 985, 990 (1960); *In re Colwash,* 57 Wash.2d 196, 198, 356 P.2d 994, 996 (1960).

Upon our review of section 231, we are satisfied Congress intended to retain exclusive jurisdiction over compulsory school attendance of Indian children unless the tribal authority and the Secretary of the Interior consent to the application of state compulsory school attendance laws. When section 231 and Public Law 846 are read together, these statutes must be liberally construed in favor of the Indians and not to their prejudice. *Youngbear,* 415 F.Supp. at 812. In so doing, we conclude state exercise of concurrent jurisdiction will deprive the federal courts of exclusive jurisdiction over compulsory school attendance of Indian children. Accordingly, the proviso in Public Law 846 applies, and the magistrate had no subject matter jurisdiction over state compulsory school attendance charges against the Bears.

In reaching this conclusion, we avoid an interpretation which works an implied repeal of a prior statute (section 231) granting a right or privilege to the Indians. *See Id.* As in *Youngbear,* we avoid the difficulties of subjecting the Sac and Fox to the standards of two sovereigns and the risk of double prosecution for essentially one offense. *Id. See In re Lelah-puc-ka-chee,* 98 F. 429, 432 (N.D.Iowa 1899) (addressing compulsory school attendance of Indian children residing on the Tama reservation).

We reach the same result when we consider the view that, even on reservations, state laws may be applied unless such application would interfere with reservation self-government or would impair a right granted or reserved by federal law. *See State, Dep't of Human Servs. v. Whitebreast,* 409 N.W.2d at 465 (Schultz, J., dissenting) (citing *Three Affiliated Tribes v. Wold Eng'g,* 467 U.S. 138, 147, 104 S.Ct. 2267, 2273–74, 81 L.Ed.2d 113, 121 (1984); *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142–43, 100 S.Ct. 2578, 2582–83, 65 L.Ed.2d 665, 672 (1980); *Williams v. Lee,* 358 U.S. 217, 220, 79 S.Ct. 269, 271, 3 L.Ed.2d 251, 254 (1959)). Application of the state compulsory education law would interfere with reservation self-government because the tribe has not consented to the application of the state compulsory school attendance law. Application would impair the right to consent or to withhold consent granted or reserved by federal law, 25 U.S.C. section 231(2).

We note that state subject matter jurisdiction over civil causes of action where an Indian of the Sac and Fox tribe is a party is not at issue here. *See* Iowa Code § 1.12. We are dealing with a criminal offense and not a domestic relations matter, such as the dependency, neglect, delinquency, care or custody of minors. *See* Iowa Code § 1.15.

■ On the other hand, we conclude the magistrate had subject matter jurisdiction over the charge of harassment filed against Anna Bear. Public Law 846 confers on the State of Iowa jurisdiction "over offenses committed by or against Indians on the Sac and Fox Indian reservation ... to the same .extent as its courts have jurisdiction generally over offenses" committed within the state. Our courts have jurisdiction over the offense of harassment. *See* Iowa Code § 708.7. We find no federal law reserving exclusive jurisdiction over the crime of harassment and conclude application of this state law did not interfere with tribal self-government or impair a right granted or reserved by federal law.

II. The only grounds upon which Anna Bear sought discretionary review of the harassment conviction and sentence focus on the alleged prejudice of the magistrate. We have before us no challenge to the sufficiency of the evidence. *Cf. State v. Fratzke,* 446 N.W.2d 781, 783 (Iowa 1989) (insufficient evidence of lack of legitimate purpose for letter led to reversal of harassment conviction). It has been stipulated for purposes of review that Magistrate Felts, during sentencing, described the telephone call as "a veiled threat to the jail by the Bears, ... now that's serious, not the type of aggravating calls Mrs. Bear has made to me and others."

■ The law imposes a substantial burden on one who seeks to prove the trial judge is not impartial. *State v. Farni,* 325 N.W.2d 107, 110 (Iowa 1982). We will not

overturn the decision of the trial judge unless there has been an abuse of discretion. *Id.* To constitute prejudice necessitating a different judge, the alleged bias and prejudice must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Id.*

We agree with the district court that Anna failed to meet her burden of proving the magistrate was not impartial. The magistrate considered her telephone call a "veiled threat to the jail" and a "serious" matter. These are appropriate considerations. Although the magistrate's further comment was ill-advised, and although we incline to the view he would have been better advised to recuse himself, no abuse of discretion attended his failure to do so. On the basis of the record presented, this isolated statement affords no basis for reversal or resentencing on the charge of harassment.

AFFIRMED.