No. 45,653

Dale Ralph Johnson, *Appellant,* v. State of Kansas, *Appellee.*

(457 P. 2d 181)

Opinion filed July 17, 1969.

*Gaylord Reichart,* of Burlington, argued the cause and was on the brief for appellant.

*Edward G. Collister, Jr.,* asssistant attorney general, argued the cause and *Kent Frizzell,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

Fatzer, J.: This is an appeal from an order of the Osage district court denying appellant's motion initiated pursuant to K. S. A. 60-1507, to vacate the judgment and sentence imposed by that court.

The district court granted the appellant an evidentiary hearing at which the appellant and the state offered evidence. The district court made comprehensive and detailed findings of fact, and the story of this proceeding is best told by quoting in full those findings:

"1. On July 10, 1965, a warrant issued on a Complaint filed that date, charging the defendant with bank robbery, was returned and on the same day, preliminary examination was waived and the defendant was bound over to the District Court of Osage County, Kansas, for trial.

"On July 15, 1965, in the District Court, the defendant was found indigent and Charles Heizer was appointed as attorney for the defendant.

"2. On October 4, 1965, on motion of the state, an insanity commission was appointed to determine if the defendant was sane and able to comprehend his position and make his defense. The Court appointed Dr. Alfred Paul Bay, Superintendent of the State Hospital at Topeka, Kansas, and Dr. Howard Williams, a member of the staff of such institution, as the commission for such

purpose. The commission made report on October 11, 1965, that the defendant was sane and able to comprehend his position and to make his defense.

"3. On October 21, 1965, Motion to Quash was argued, raising among other objections the question of constitutionality of K. S. A. 21-531. The motion was sustained as to ground 2 alleging indefiniteness and insufficiency as to the description of the property alleged to be stolen and was overruled on all other grounds. The state was granted leave to amend generally.

"4. On November 2, 1965, the defendant was duly arraigned and pled not guilty by reason of insanity. On motion for that purpose, allowance of funds was authorized for defendant to obtain expert witness for psychiatric examination and testimony. The case was assigned for trial on December 6, 1965, at 9:00 a. m.

"5. On November 24, 1965, on motion of the defendant, the case was continued to December 22, 1965, at 9:00 a. m.

"6. On Friday, December 10, 1965, at 5 o'clock, p. m., on finding attorney for defendant had been hospitalized for planned surgery, his withdrawal as appointed attorney was approved and Clyde M. Burns was appointed attorney for defendant and directed to proceed with the discharge of his duties as such. On December 13, 1965, defendant was brought into court, was informed of withdrawal of Charles Heizer as attorney and of appointment of Clyde M. Burns as his attorney. On application and leave granted, defendant withdrew his plea of not guilty by reason of insanity and entered a plea of not guilty.

"On December 22, 1965, trial of the action was commenced and was concluded on December 23, 1965, with verdict of guilty as charged.

"On announcement of intention to file a motion for new trial, time for filing was fixed as on or before December 28, 1965, and the same was assigned for hearing on December 29, 1965.

"7. On December 27, 1965, Motion for a New Trial was filed on the grounds:

"1. For newly discovered evidence.

"2. For the reason that the verdict was contrary to the evidence.

"3. The jury received evidence not authorized by the Court.

"On December 28, 1965, the parties stipulated that the hearing of the motion for a new trial could be held on such date. The motion for a new trial was argued and overruled. Judgment was entered and defendant was sentenced for the crime of bank robbery as defined by K. S. A. 21-531 as charged in the Information to be confined in the Kansas State Penitentiary at Lansing, Kansas, at hard labor for not less than ten nor more than fifty years and there was deducted from his sentence 90 days dating from September 30, 1965, for time spent in jail pending the disposition of the case. Defendant was informed that he had a right to appeal to the Kansas Supreme Court from any adverse decision of the Court and that he might have counsel appointed to assist in the appeal. Defendant's Motion to Suspend the Execution of the Sentence and For Probation was overruled.

"8. An April 28, 1966, on affidavit filed, and finding of good faith, Clyde M. Burns was appointed as attorney for the defendant to take an appeal and transcript was ordered at the expense of the county. The Clerk was directed to forthwith notify counsel of his appointment and the official reporter of

the order for the transcript. Transcript of the trial was prepared and delivered to defendant's counsel on July 12, 1966.

"9. On May 5, 1966, defendant filed notice of appeal to the Supreme Court with endorsement thereon of service acknowledged and form of proof thereof waived by the County Attorney. The Clerk of the District Court failed and neglected to transmit the notice of appeal to the Clerk of the Supreme Court.

"10. On August 4, 1966, the Court signed written Journal Entry endorsed, submitted by attorney for the defendant and approved by County Attorney and signed by them respectively, granting 30 days to file Designation of Contents of Record on Appeal, and on September 6, 1966, signed a similarly submitted and signed order granting 60 days in which to file the same.

"11. On November 23, 1966, the defendant filed what was labeled as 'Motion to Dismiss Appeal' with prayer 'that the motion be sustained' and had attached thereto marked 'Exhibit A,' made a part thereof, written statement, signed by the defendant as follows:

"'I, Dale Ralph Johnson, do hereby authorize my attorney, Clyde M. Burns, to dismiss my appeal to the Supreme Court of the State of Kansas from my conviction in the District Court of Osage County, Kansas. I have been advised by my said attorney concerning this abandonment of my appeal and am doing this of my own free will and accord.

"'Dated at Lansing, Kansas, this 3rd day of November, 1966.

"'Dale Ralph Johnson'
"(signed).'"

"On presentation the Court entered order in its minutes, 'On motion of defendant, appeal is dismissed.' At the same time, the Court authorized the release to the bank of the exhibit of coins and currency, found in defendant's possession and introduced in evidence.

"12. Pursuant to the provisions of K. S. A. 21-2613, the pistol used by the defendant was, on January 17, 1967, ordered sold by the Court and the same was sold as provided by law.

"13. On December 11, 1967, defendant filed a motion under the procedure provided by K. S. A. 60-1507 and on the same day, the Clerk was directed to issue notice of filing of the same to the County Attorney. The Court appointed Leonard W. McAnarney as attorney for the defendant.

"14. On December 19, 1967, the motion was assigned for trial on February 5, 1968, at 9:00 a. m.

"15. On February 5, 1968, the movant, Dale Ralph Johnson, appeared in person and by Leonard W. McAnarney, his attorney, and full hearing was held on the motion with evidence being introduced by both sides.

"16. Under date of January 9, 1966, the defendant, by letter to his attorney, requested him to let the appeal go for now and try and get an appointment with the Governor for a pardon or to commute sentence. The defendant's mother also made some inquiry about clemency, had consulted an attorney about such matter and had informed the defendant and defendant's attorney of what she had been doing.

"The defendant had taken inconsistent positions and on some occasions, the defendant informed his attorney that he wanted an appeal and on other

occasions, he said not to. The defendant wanted out of the penitentiary the quickest way possible and would change his mind from time to time as the best way to do it. His attorney informed the defendant that he felt there were no grounds for appeal.

"At the request of defendant's mother, his attorney went to see the defendant at the penitentiary on November 23, 1967. (NOTE: This date should be November 3, 1966, as recited in Finding 11). He then informed the defendant that defendant's mother had consulted an attorney about asking for clemency and was told by defendant that he knew about this. Defendant's attorney informed the defendant that he had been advised by the pardon attorney that the Governor would not entertain an application for clemency because an appeal was pending. The defendant informed his attorney that he wanted to abandon his appeal and try for clemency. At that time at the request of his attorney, defendant signed the instrument identified as Exhibit A. This was the free and voluntary act of the defendant and the statement was knowingly and understandably made.

"17. A condensed summary of the state's case disclosed the following: the sheriff and undersheriff were in Overbrook the day the robbery occurred, became suspicious of a fast moving car dodging in and out of vehicles in a parade then in progress. As they started to follow in investigation, Larry Coursen, who had been in the bank and observed the robbery, drove his car near the sheriff and called out to him that the bank had been robbed. The sheriff followed the vehicle in hot pursuit at speeds up to 115 miles per hour. The pursued car occupied by the defendant as driver and sole occupant stopped as the sheriff pointed his gun out of the window of the car in which he was riding. A paper sack containing coins and currency and a .22 caliber pistol was on the front seat of defendant's automobile. Officers from Franklin County arrived at about the time defendant stopped his car.

"The defendant had been seen in Overbrook that morning by others. He was identified as having been in the bank and received the money by a witness, Larry Coursen, who had come into the bank, and also by an officer of the bank. A woman employee who had been the immediate victim of the holdup in which the defendant used the gun identified the defendant and the distinctive paper sack as having been the one she observed. The amount of money taken from the bank was identical in amount as that found in defendant's automobile.

"The defendant was thirty-three years of age. His defense was primarily based on claim of insanity. Witnesses called on his behalf were his mother, his wife and to prove no previous record, the sheriff. The defendant also took the stand in his own behalf and there was no substantial dispute in his testimony with the state's witnesses as to what occurred.

"Doctor Joseph Satten, a well-known psychiatrist with the Menninger Foundation at Topeka, Kansas, was the psychiatric expert obtained for the defendant as an expert witness. The ultimate fact in his testimony was that the defendant was driven to commit the crime and wanted to be captured in order that an earlier crime should be paid for; but on cross examination, he testified that defendant knew it was wrong.

"The earlier crime reference concerned an incident in which defendant apparently shot and killed his father when he was five or six years of age.

Doctor Satten's testimony as to this event was based on information from the defendant's mother and wife. This was in addition to the defendant, whose memory of the event was what he had been told.

"At the time of trial, defendant's attorney had had seven years experience in the practice of law. This included jury trial experience both civil and criminal and both prosecution and defense in criminal cases.

"He tried the case in a good, professional-like manner.

"19. The defendant testified that he had no evidence or knowledge that his Court-appointed attorney committed conspiracy to deny him his right to perfect an appeal and did not offer any other evidence on such claim.

"20. The Court indicated it would permit defendant to withdraw his motion and abandonment of appeal of November 23, 1966, and would direct the notice of appeal to be certified to the Supreme Court for filing. The defendant declined and refused to do so."

The appellant contends he was denied effective assistance of counsel both during and after his trial in violation of the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States. He first argues counsel was not prepared to present his case the day of the trial, and the district court erred in overruling his request for a continuance.

With respect to the denial of appellant's requested continuance, there is nothing in the record to indicate its denial resulted in any prejudice to his substantial rights. The granting or denial of a continuance in a criminal prosecution is largely within the sound discretion of the district court and its ruling will not be disturbed in the absence of a showing that there has been an abuse of discretion which has prejudiced the defendant's substantial rights. (*State v. Patterson,* 200 Kan. 176, 434 P. 2d 808; *State v. Adamson,* 197 Kan. 486, 419 P. 2d 860; *State v. Brown,* 193 Kan. 654, 396 P. 2d 401; *State v. Hickock & Smith,* 188 Kan. 473, 363 P. 2d 541, appeal dismissed 373 U. S. 544, 10 L. Ed. 2d 688, 83 S. Ct. 1545.)

The contention that appellant's attorney was not prepared for trial is not supported by the record. On the contrary, it clearly shows that counsel diligently prepared the appellant's case and adequately represented him at all times in the district court. Mr. Burns was appointed to represent the appellant nine days before the trial and conferred with him many times. He also conferred with Mr. Heizer, the appellant's first appointed counsel, while Heizer was confined in the hospital in Topeka. Mr. Burns interviewed all the witnesses involved in the case, and investigated matters pertaining to the charge prior to the trial.

The rule of adequate representation of counsel is stated in *Call*

*v. State,* 195 Kan. 688, 408 P. 2d 668, cert. den. 384 U. S. 957, 16 L. Ed. 2d 552, 86 S. Ct. 1581, as follows:

"[W]hile the law requires legal and faithful representation on the part of counsel for an accused, either employed or court appointed, it does not guarantee the assistance of the most brilliant and experienced counsel . . ." (l. c. 692.)

. . . . . . . . . . . . .

"The adequacy of services performed by an attorney on behalf of a client must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells. . . ." (l. c. 693.)

See, also, *Ray v. State,* 202 Kan. 144, 446 P. 2d 762.

The record clearly indicates that Mr. Burns diligently represented the interests of the appellant. This is confirmed by the testimony of Mr. Burns and Mr. Heizer who testified at the 1507 hearing, and no showing has been made by the appellant why the district court's determination on the point is erroneous. Effective assistance of counsel cannot be equated with successful assistance of counsel. We conclude the appellant was not denied his right to counsel under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

The appellant next contends his counsel conspired to deny him his right to appeal following his conviction in the district court. The findings of the district court are that on November 3, 1966, Mr. Burns visited the appellant at the state penitentiary to discuss the advisability of abandoning his appeal to the supreme court. Mr. Burns advised appellant that if he wanted to abandon his appeal, to sign the statement set forth in the district court's findings No. 11. The appellant stated he wanted to abandon the appeal and try for clemency because he was advised by the pardon attorney that the governor would not entertain an application for clemency while an appeal was pending.

There is absolutely no evidence the appellant was coerced into signing the statement and the district court found he freely and voluntarily signed the same, and that it was knowingly and understandably executed. Furthermore, the appellant testified at the 1507 hearing that he had no evidence or knowledge that Mr. Burns conspired to deny him his right to perfect his appeal. Hence, his contention cannot be sustained.

The record is undisputed that the clerk of the district court was derelict in his duty in failing to transmit the appellant's timely executed notice of appeal to the clerk of this court. K. S. A. 62-1724

( *a* ) requires that a certified copy of the notice of appeal with proof of service and a certified copy of the journal entry of conviction be sent by the clerk of the district court to the clerk of the supreme court within ten days after the notice of appeal is filed. There was nothing more required to be done by the appellant with respect to perfecting his appeal, and no failure of officers to do their duty can deprive him of that statutory right. ( *Cochran v. Amrine*, 155 Kan. 777, 130 P. 2d 605.) However, regardless of what may have occurred in the appeal procedure, the failure to timely certify the appellant's notice of appeal to the clerk of this court, under the facts and circumstances here presented, does not affect the validity of his conviction. As indicated, and on November 3, 1966, the appellant freely and voluntarily executed his motion to dismiss his appeal. In addition, and at the close of the evidentiary hearing on his 1507 motion, the district court stated it would permit the appellant to withdraw his 1507 motion, and his motion of abandonment of his appeal of November 3, 1966, and would direct that the notice of appeal from his conviction be certified to the supreme court for filing. However, and in open court, the appellant declined the district court's offer and refused to appeal.

We have fully reviewed the record and the appellant has failed to affirmatively make it appear the district court committed any error in its findings of fact and conclusions of law, and we conclude the appellant is not entitled to have his sentence vacated.

The judgment of the district court is affirmed.