No. 53,334

STATE OF KANSAS, *Appellee,* v. ABRAHAM L. MITCHELL, *Appellant.*

(642 P.2d 981)

Opinion filed April 3, 1982.

*William E. Enright,* of Ireland, Enright & Baird, of Topeka, argued the cause and was on the briefs for the appellant.

*Kevin E. J. Regan,* assistant district attorney, Olathe, argued the cause, and *Robert T. Stephan,* attorney general, and *J. Richard Lake,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: Abraham L. Mitchell (defendant-appellant) was found guilty of murder in the second degree (K.S.A. 21-3402) by a jury in Jackson County, Kansas. He now appeals, contending the state of Kansas did not have jurisdiction over him for the crime charged. In support of that contention, he cites the Federal Major Crimes Act, 18 U.S.C.A. 1981 Supp. § 1153.

Before addressing the substantive issue raised by the defendant on appeal, we must first address the State's contention that the defendant waived his right to appeal by failing to file a timely notice of appeal. The record reflects that the defendant was sentenced August 6, 1980. K.S.A. 22-3608 provides the defendant may appeal not later than ten days after expiration of the district court's power to modify the sentence. Under the provisions of K.S.A. 1980 Supp. 21-4603(2) the district court may modify a sentence within 120 days after the sentence is imposed. Thus, the

defendant has, after sentence is imposed, a maximum of 130 days in which to bring his appeal. Defendant Mitchell's notice of appeal, dated June 6, 1981, came long after the expiration of the 130 days.

In its brief, the State correctly summarizes the law relative to defendant's right to appeal which is guaranteed neither by the Federal Constitution, *Griffin v. Illinois,* 351 U.S. 12, 18, 100 L.Ed. 891, 76 S.Ct. 585 (1956), nor by the Kansas Constitution, *State v. Smith,* 223 Kan. 47, 48, 574 P.2d 161 (1977); *State v. Hanes,* 187 Kan. 382, 385, 357 P.2d 819 (1960). Article 3, Section 3 of the Kansas Constitution provides in part:

"The supreme court shall have original jurisdiction in proceedings in quo warranto, mandamus, and habeas corpus; and such appellate jurisdiction as may be provided by law."

The general rule is that the Kansas appellate courts have no jurisdiction to entertain an appeal in a criminal case unless the defendant brings his appeal within the time established by statute. *State v. Ortiz,* 230 Kan. 733, 735, 640 P.2d 1255 (1982); *State v. Moses,* 227 Kan. 400, 404, 607 P.2d 477 (1980); *State v. Smith,* 223 Kan. at 48; *State v. Thompson,* 221 Kan. 165, 167, 558 P.2d 1079 (1976); *Ware v. State,* 198 Kan. 523, 525, 426 P.2d 78 (1967).

Under some circumstances, however, this court has implicitly recognized an exception to the general rule. See, *e.g., Troy v. State,* 215 Kan. 368, 524 P.2d 1127 (1974); *Brizendine v. State,* 210 Kan. 241, 499 P.2d 525 (1972); *Johnson v. State,* 203 Kan. 947, 457 P.2d 181 (1969). "An exception . . . has been recognized only in those cases where a defendant either was not informed of his or her rights to appeal or was not furnished an attorney to exercise those rights or was furnished an attorney for that purpose who failed to perfect and complete an appeal." *State v. Ortiz,* 230 Kan. at 735-36. Defendant Mitchell contends he was not informed of his right to appeal and requests this court to hear his appeal out of time.

Three post-trial proceedings are relevant to our consideration of this issue. At the sentencing hearing the defendant filed a motion to dismiss for lack of jurisdiction on the same grounds which he raises on appeal. The motion was overruled and sentence imposed. Significant to this appeal is the fact the district court judge did not, at the time sentence was imposed, inform the defendant of his statutory right to appeal. K.S.A. 22-3424(5) provides:

"After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the costs of an appeal to appeal *in forma pauperis*. If the defendant so requests the clerk of the court should prepare and file forthwith a notice of appeal on behalf of the defendant."

In April 1981 the defendant filed a pro se motion alleging he had not been advised of his right to appeal and requesting the right to take a direct appeal. Counsel was appointed for the defendant and a hearing held on May 27, 1981. Mitchell's testimony at the hearing revealed he had made inquiries regarding appeal shortly after he was sentenced. According to Mitchell, his court-appointed attorney told him to file an appeal once he got to Lansing but did not tell him the clerk of the district court had a statutory duty to file an appeal if requested. Mitchell inquired about an appeal at Lansing but was told to initiate the appeal when he reached the Kansas Reception and Diagnostic Center (KRDC). At KRDC, he was told to wait until he returned to Lansing. Once back at Lansing, he again contacted the legal aid advisor. At this time, Mitchell learned that there was a time limit on his right to appeal and that the time had run. The pro se motion followed. At the conclusion of the hearing on May 27, the motion was dismissed because it was filed more than 130 days after sentencing. K.S.A. 1980 Supp. 21-4603(2).

On June 1, 1981, the court on its own motion reconsidered its ruling of May 27 and entered an order granting the defendant the right to appeal his conviction out of time. The court made four specific findings:

"1. That Defendant was sentenced in this matter on August 6, 1980;

"2. At the time of sentencing, the Court inadvertently failed to advise Defendant of his right of appeal pursuant to K.S.A. 22-3424(5);

"3. That Defendant was informed of his right of appeal by his attorney, Marlin A. White, and knew he had the right to appeal his conviction;

"4. Notwithstanding, the statutory duty to inform the Defendant of his right to appeal is imposed upon the Court, the Court failed to do so and the Court now wishes to correct its error."

While it is clear the defendant was not informed of his right to appeal by the judge, it is apparent from his actions that he knew something of his appeal right. The question for decision is whether, under the facts of this case, he knew enough. We find that he did not.

Because K.S.A. 22-3424(5) is identical to Fed. R. Crim. Proc. 32(a)(2), decisions construing that rule are entitled to great weight, although they are not controlling on this court. See, *e.g.,* *Brookover Feed Yards, Inc. v. Carlton, Commissioner,* 213 Kan. 684, 690, 518 P.2d 470 (1974); *Reed v. Chaffin,* 205 Kan. 815, 819, 473 P.2d 102 (1970); *McCabe v. Board of Johnson County Comm'rs.,* 5 Kan. App. 2d 232, 235, 615 P.2d 780, *rev. denied* 228 Kan. 807 (1980).

The purpose of K.S.A. 22-3424(5) logically is the same as that of the federal rule: "[T]o insure that all defendants who might wish to appeal are *fully* aware of their appeal rights." (Emphasis added.) *United States v. Benthien,* 434 F.2d 1031, 1032 (1st Cir. 1970). A full awareness of one's rights surely must include the knowledge that there is a time frame within which those rights must be exercised. From the record in this case, it is apparent the defendant did not have that knowledge. This court will consider the appeal out of time and reach the substantive issue raised. In doing so, we express no opinion whether the appeal would have been heard had the record revealed the attorney had made a *full* disclosure to the defendant of his appeal rights.

Defendant-appellant raises one issue on appeal: Whether the state of Kansas had jurisdiction to try him for the crime charged, murder in the second degree. For purposes of this appeal, it is unnecessary to state any of the factual background surrounding the death of Richard Pahmahmie, Sr. The parties have stipulated that the defendant and the victim were "Indians" and that the offense in question occurred within "Indian country" as those terms are used and defined in 18 U.S.C.A. § 1151 *et seq.* The defendant contends that the Federal Major Crimes Act, 18 U.S.C.A. 1981 Supp. § 1153, grants exclusive federal jurisdiction over an Indian defendant charged with killing another Indian within Indian country. The State argues Kansas has concurrent jurisdiction by virtue of 18 U.S.C.A. § 3243. Some background of the statutes in question should prove helpful.

Exclusive tribal jurisdiction over major crimes caused concern in the last century and led to passage of the Federal Major Crimes Act in 1885. *Keeble v. United States,* 412 U.S. 205, 209-10, 36 L.Ed.2d 844, 93 S.Ct. 1993 (1973). That statute, now codified at 18 U.S.C.A. 1981 Supp. § 1153, provides in pertinent part:

"Any Indian who commits against the person or property of another Indian or

other person any of the following offenses, namely, murder, manslaughter, kidnaping, rape, carnal knowledge of any female, not his wife, who has not attained the age of sixteen years, assault with intent to commit rape, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and larceny within the Indian country, shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States."

The Federal Major Crimes Act has long been viewed as conferring *exclusive* federal jurisdiction over the enumerated federal crimes. See, *e.g., Seymour v. Superintendent,* 368 U.S. 351, 359, 7 L.Ed.2d 346, 82 S.Ct. 424 (1962); *Williams v. Lee,* 358 U.S. 217, 220 n. 5, 3 L.Ed.2d 251, 79 S.Ct. 269 (1959); *United States v. Kagama,* 118 U.S. 375, 377-78, 30 L.Ed. 228, 6 S.Ct. 1109 (1886).

Historically, a special relationship has existed between the federal government and members of Indian tribes, with the federal government's cession of jurisdictional power to the states over intra and inter-tribal matters an infrequent occurrence. Criminal jurisdiction in particular has been the subject of only limited grants. See generally, Clinton, *Criminal Jurisdiction Over Indian Lands: A Journey Through a Jurisdictional Maze,* 18 Ariz. L. Rev. 503 (1976).

Congress has, on occasion, specifically abrogated the exclusive federal jurisdiction over major crimes. For instance, 18 U.S.C.A. 1981 Supp. § 1162 provides the states of Alaska, California, Minnesota, Nebraska, Oregon, and Wisconsin have jurisdiction over offenses committed by or against Indians in certain Indian country within those states.

The states of Kansas, Iowa, and North Dakota have been given jurisdictional grants in separate but substantially similar statutes which appear to be in conflict with the exclusive grant of federal jurisdiction over major crimes in 18 U.S.C.A. 1981 Supp. § 1153. The statutory provision giving Kansas jurisdiction over offenses committed by or against Indians on Indian reservations is found at 18 U.S.C.A. § 3243.

"Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.

"This section shall not deprive the courts of the United States of jurisdiction

over offenses defined by the laws of the United States committed by or against Indians on Indian reservations."

The State argues this provision unambiguously confers concurrent jurisdiction with the federal government for the so-called major crimes. Given the historically protective attitude of the federal government toward the Indian tribes and the language of the Federal Major Crimes Act, we do not believe the statute is clearly unambiguous. What appears to be a clear jurisdictional grant is clouded by the proviso that "[t]his section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations."

This court has not had occasion to interpret 18 U.S.C.A. § 3243 although it was mentioned briefly in *State v. Levier,* 226 Kan. 461, 462-3, 601 P.2d 1116 (1979), which held arrests can be made on Indian reservations for crimes committed *off the reservation.* One federal case interpreting the identical grant of jurisdiction to Iowa, however, provides us with an analysis. See *Youngbear v. Brewer,* 415 F. Supp. 807 (N.D. Iowa 1976), *aff'd.* 549 F.2d 74 (8th Cir. 1977). The *Youngbear* court utilized maxims of statutory construction, legislative history, as well as a comparison of language in other statutes abrogating exclusive federal jurisdiction to reach the conclusion Iowa did not share concurrent jurisdiction with the federal government over major crimes committed by Indians on the Indian reservations. By comparison, ours is a simpler task.

The legislative history of 18 U.S.C.A. § 3243 clearly indicates the proviso was intended to preserve exclusive federal jurisdiction over the major crimes. The Congressional Record for 1940 contains two versions of the bill. The bill as originally read provided:

"*Be it enacted, etc.,* That *concurrent* jurisdiction is hereby relinquished to the State of Kansas to prosecute Indians and others for offenses by or against Indians or others, committed on Indian reservations in Kansas, including trust or restricted allotments, to the same extent as its courts have jurisdiction for offenses committed elsewhere within the State in accordance with the laws of the State; and section 328 of the act of March 4, 1909 (35 Stat. 1151), as amended by the act of June 28, 1932 (47 Stat. 337), and sections 2145 and 2146 of the United States Revised Statutes (*U.S.C., title 18, sec. 548* [Federal Major Crimes Act], title 25, secs. 217, 218) *are modified accordingly* insofar as they apply to Indian reservations or Indian country in the said State of Kansas." 86 Cong. Rec. 5596, 76th Cong. 3rd Sess. (May 6, 1940). (Emphasis added.)

A subsequent committee amendment eliminated the references to concurrent jurisdiction and modification of federal law.

"That jurisdiction is hereby conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State: *Provided, however,* That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations." 86 Cong. Rec. 5596, 76th Cong. 3rd Sess. (May 6, 1940).

As the *Youngbear* court observed in comparing the Iowa and Kansas statutes:

"By deleting this language, the only intent which can reasonably be inferred to Congress was to preserve exclusive Federal jurisdiction over the major crimes." 415 F. Supp. at 813.

That intent is underscored by a letter from a Kansas congressman which appears in the report of the House Committee on Indian Affairs. Representative W. P. Lambertson wrote, "The Government here relinquishes to the State full jurisdiction over the Indians for small offenses." H.R. Rep. 1999 at 2, 76th Cong. 3rd Sess. (1940).

This legislative history clearly indicates Congressional intent to retain exclusive jurisdiction over the crimes specifically enumerated in 18 U.S.C.A. 1981 Supp. § 1153, among them murder. We find the state of Kansas acted beyond the scope of the jurisdictional authority conferred by 18 U.S.C.A. § 3243 in trying Abraham L. Mitchell for murder.

The judgment of the district court is reversed with directions to dismiss the action.