**Emery L. NEGONSOTT,**
**Plaintiff–Appellant,**

v.

**Harold SAMUELS and The Attorney General of the State of Kansas, Defendants–Appellees.**

No. 88–2666.

United States Court of Appeals,
Tenth Circuit.

May 8, 1991.

Pamela S. Thompson, Kansas City, Kan., for plaintiff-appellant.

Timothy G. Madden, Sp. Asst. Atty. Gen., Dept. of Corrections, Topeka, Kan., for defendants-appellees.

Before HOLLOWAY, Chief Judge, SEYMOUR and EBEL, Circuit Judges.

SEYMOUR, Circuit Judge.

This habeas case requires us to determine the scope of criminal jurisdiction granted by 18 U.S.C. § 3243 (1988) to the State of Kansas over state-law offenses committed by Indians on Indian lands. Petitioner Emery L. Negonsott claims that Kansas lacked subject matter jurisdiction to prosecute him for aggravated battery because that offense is within exclusive federal jurisdiction under the Federal Major Crimes Act, 18 U.S.C. § 1153 (1988). The district court held that the State had jurisdiction. We agree and conclude that the federal grant of criminal jurisdiction to the State of Kansas in section 3243 extends to state-law offenses that are also crimes enumerated in the Major Crimes Act.

I.

Negonsott belongs to the Kickapoo Tribe and resided during 1985 on the Kickapoo reservation in Brown County, Kansas. He was arrested, charged, and convicted in that year of aggravated battery in the District Court of Brown County for shooting another Kickapoo Indian on the Kickapoo reservation. *See* Kan.Stat.Ann. § 21–3414 (1988). The state trial judge, relying on *State v. Mitchell*, 231 Kan. 144, 642 P.2d 981 (1982), vacated the conviction for lack of subject matter jurisdiction. On appeal, the Kansas Supreme Court reversed in a decision overruling *Mitchell*, and Negonsott's case was remanded for sentencing. *See Kansas v. Nioce*, 239 Kan. 127, 716 P.2d 585 (1986). Negonsott was sentenced to imprisonment for a term of three to ten years.

Negonsott filed a petition for a writ of habeas corpus in the United States District court for the District of Kansas, continuing his claim that the State of Kansas lacked jurisdiction to convict him for the offense of aggravated battery as defined by Kansas state law. The district court denied the writ and Negonsott appeals.

II.

The sole issue in this case is whether 18 U.S.C. § 3243 confers jurisdiction on the State of Kansas to prosecute petitioner, a Kickapoo Indian, for the state-law crime of aggravated battery against another Indian committed on the reservation. This question of statutory interpretation is one of law, which we review *de novo*. *See Ross v. Neff*, 905 F.2d 1349, 1352 (10th Cir.1990).

In analyzing the criminal jurisdiction of the State of Kansas over crimes involving Indians committed on Indian land, we begin with the language of the relevant statutes. It is elementary that "[i]n construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979). If a statute is susceptible to two meanings, a court will choose a meaning that gives full effect to all the provisions of the statute. *See Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). Moreover, statutes should be construed so that their provisions are harmonious with each other. *See United States v. Stauffer Chemical Co.*, 684 F.2d 1174, 1184 (6th Cir.1982).

The statute under which the State of Kansas claims subject matter jurisdiction provides:

"Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, *to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State.*

"*This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.*"

18 U.S.C. § 3243 (emphasis added). The second sentence of this statute appears to refer in part to the Indian Major Crimes Act, which provides:

"(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, ... within the Indian Co⁓.ntry, *shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.*

"(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense."

18 U.S.C. § 1153 (1988) (emphasis added). A separate statute governs the jurisdiction and venue of the Major Crimes Act as follows:

"All Indians committing any offense listed in the first paragraph of and punishable under section 1153 (relating to offenses committed within Indian country) of this title *shall be tried in the same courts and in the same manner as are all other persons committing such offense within the exclusive jurisdiction of the United States.*"

18 U.S.C. § 3242 (1988) (emphasis added).[1]

The crimes of assault with a dangerous weapon and assault resulting in serious bodily injury, named in the Major Crimes Act, are defined for purposes of federal jurisdiction at 18 U.S.C. §§ 113(c) & (f)

(1988). Federal jurisdiction over major crimes committed by Indians has been held to be exclusive. *See United States v. John,* 437 U.S. 634, 651, 98 S.Ct. 2541, 2550, 57 L.Ed.2d 489 (1978); *United States v. Antelope,* 430 U.S. 641, 649 n. 12, 97 S.Ct. 1395, 1400 n. 12, 51 L.Ed.2d 701 (1977); *Seymour v. Superintendent,* 368 U.S. 351, 359, 82 S.Ct. 424, 429, 7 L.Ed.2d 346 (1962); *see also Langley v. Ryder,* 778 F.2d 1092, 1096 n. 2 (5th Cir.1985) (holding that section 1153 preempts state criminal jurisdiction, citing *John* ). Negonsott contends that the Kansas Act did not confer jurisdiction on the Kansas state courts over those corresponding state law offenses which are also included in the Major Crimes Act and which are otherwise within exclusive federal jurisdiction.

The first sentence of the Kansas Act at issue here, *see* supra at 4, unambiguously confers criminal jurisdiction on the State of Kansas over offenses committed by Indians against Indians on Indian reservation land *"to the same extent* as its courts have jurisdiction over offenses committed elsewhere within the State *in accordance with the laws of the state."* 18 U.S.C. § 3243 (emphasis added). In other words, the grant of state jurisdiction over *all* types of state crimes is complete. The second sentence of the Kansas Act appears intended to ensure that the congressional grant of jurisdiction to Kansas state courts over state-law crimes contained in the first sentence would not "deprive" the United States courts of its jurisdiction over federally-defined offenses committed by or against Indians on Indian reservations. An ambiguity exists, however, because as we have noted federal jurisdiction over major crimes committed by Indians would otherwise be exclusive. Thus, we must resolve whether Congress intended to grant Kansas courts concurrent jurisdiction with federal courts over the crimes enumerated in

---

**1.** The predecessor to sections 1153 and 3242 was initially passed in 1885˙ in response to the Supreme Court's opinion in *Ex Parte Crow Dog,* 109 U.S. 556, 3 S.Ct. 396, 27 L.Ed. 1030 (1883), which held that the limited jurisdiction of the federal courts did not extend to crimes by an Indian against another Indian on an Indian

reservation. *See United States v. Kagama,* 118 U.S. 375, 383, 6 S.Ct. 1109, 1113, 30 L.Ed. 228 (1886). In the original enactment, what are now sections 1153 and 3242 were combined in one provision. Act of March 3, 1885, ch. 341, § 9, 23 Stat. 385.

the Major Crimes Act, or whether by the second sentence of the Kansas Act Congress intended to retain exclusive jurisdiction in the federal courts over those specific crimes.

The second sentence of the Kansas Act is of little help in resolving this conflict, since the words "shall not deprive the courts of the United States of jurisdiction" may be read in at least two ways. Congress may have intended, as argued by Negonsott, that the Kansas Act not deprive the federal court of any *exclusive* jurisdiction it enjoyed under existing law. Or, Congress may have meant to preserve the *scope* of federal jurisdiction over federally-defined crimes on Indian land, while modifying the *exclusive* jurisdiction of the federal courts in favor of concurrent jurisdiction where the federally defined crimes and crimes under Kansas law overlapped.

In resolving this ambiguity, we are mindful that " 'statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' " *Bryan v. Itasca County,* 426 U.S. 373, 392, 96 S.Ct. 2102, 2112, 48 L.Ed.2d 710 (1976) (quoting *Alaska Pac. Fisheries v. United States,* 248 U.S. 78, 89, 39 S.Ct. 40, 42, 63 L.Ed. 138 (1918)). However, "statutory provisions which are not clear on their face may "be clear from the surrounding circumstances and legislative history.' " *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191, 208 n. 17, 98 S.Ct. 1011, 1020 n. 17, 55 L.Ed.2d 209 (1978) (citing *DeCoteau v. District County Court,* 420 U.S. 425, 447, 95 S.Ct. 1082, 1094, 43 L.Ed.2d 300 (1975)); *see also Jones v. Intermountain Power Project,* 794 F.2d 546, 552 (10th Cir.1986). We accordingly look to legislative history to determine whether Congress intended to affect the exclusivity of federal jurisdiction over enumerated major crimes committed by Indians by passing the Kansas Act.

In enacting the Kansas Act, both the House and Senate Committees on Indian Affairs submitted reports. These reports incorporated a letter from the Acting Secretary of the Interior to the Chairman of the House Committee on Indian Affairs concerning the bill. The letter explained the problems the legislation was designed to address and how the bill intended to solve them. *See* Letter from E.K. Burlew, Acting Secretary of the Interior, to Rep. Will Rogers, Chairman of the House Committee on Indian Affairs, *reprinted in* H.R. Rep. No. 1999, 76th Cong., 3d Sess. 2 (1940) (House Report); *see also* Sen. Rep. No. 1523, 76th Cong. 3d Sess. 1–3 (1940). The Secretary noted that federal jurisdiction over crimes concerning Indians on Indian land had been limited, leaving "some major crimes as well as practically all minor offenses outside the jurisdiction of the Federal courts." House Report at 2. Because the state lacked jurisdiction over such offenses, maintenance of law and order depended on the tribal courts, which had not functioned on Kansas reservations for many years. To fill this void, and

"[w]ith the approbation of the tribes concerned, the State courts of Kansas have in the past undertaken the trial and punishment of offenses committed on these reservations, *including those covered by Federal statutes. The legality of this practice being questioned recently, the tribal councils of the four Kansas tribes have recommended the enactment of legislation authorizing its continuance* by a transfer of jurisdiction to the State."

*Id.* (emphasis added).

The Secretary also noted that the issuance of unrestricted patents for alloted lands interspersed with tribal and restricted lands created a jurisdictional checkerboard, resulting in practical difficulties. These difficulties

"can be most effectively met by conferring criminal jurisdiction over the entire area on the State. These considerations of administrative convenience *extend to those offenses which are now cognizable in the Federal courts under the reservation statutes as well as those which are not.*"

*Id.* (emphasis added). Although the proposed legislation extended to the types of offenses then cognizable under federal law,

the Secretary specifically observed that "[e]nactment of the bill will not prevent the prosecution in the Federal courts of those acts which are within the cognizance of these courts under existing law." *Id.* at 2–3. These comments in the House and Senate Reports reflect an understanding that the proposed legislation would legalize the State's assertion of complete criminal jurisdiction under state law over the Indian tribes without depriving the federal court of its more limited criminal jurisdiction by virtue of preexisting jurisdictional grants such as the Major Crimes Act.

Like the court in *Youngbear v. Brewer,* 415 F.Supp. 807 (N.D.Iowa 1976), *aff'd,* 549 F.2d 74 (8th Cir.1977) (construing analogous Iowa Act),[2] Negonsott relies heavily on a letter from Representative W.P. Lambertson of Kansas to the House Committee on Indian Affairs in support of his position that the scope of the Kansas State Court's jurisdiction under the Kansas Act does not extend to offenses enumerated in the Major Crimes Act. In his letter in support of the legislation, Lambertson stated that "[t]he Government here relinquishes to the state *full* jurisdiction over the Indians for *small* offenses." House Report at 1–2 (emphasis added). Negonsott interprets this letter as necessarily implying that federal courts were to retain exclusive jurisdiction over *major* offenses. Although it is possible, of course, that Congressman

Lambertson meant to imply by this statement that the State of Kansas would assume no jurisdiction over the types of crimes covered in the Major Crimes Act, this implication is by no means a necessary one. It is also possible that Representative Lambertson understood the bill to confer "full" jurisdiction over small crimes occurring among Indians to fill the void left by the tribal courts, while conferring concurrent power to prosecute the types of crimes covered by the Major Crimes Act. If we give Negonsott's interpretation credence, we are at a loss to explain why it contravenes the memorandum and letter from the Secretary of the Interior, incorporated along with Representative Lambertson's letter into the House and Senate Reports, which clearly evince an understanding that Kansas under the Act as amended could exercise criminal jurisdiction over all state-law crimes occurring on Indian lands.

The Eighth Circuit in *Youngbear* and Negonsott also attach much significance to the amendment of the title of the bill, replacing the phrase "concurrent jurisdiction" with the word "jurisdiction,"[3] and eliminating the reference to modification of the Major Crimes Act. *See* 86 Cong.Rec. 5596–97, 76th Cong. 3d Sess. (May 6, 1940).[4] However, the Secretary, who recommended the revisions, offered an explanation in his letter. Regarding amendment of the title "for clarification," he stated:

**2.** The Eighth Circuit in *Youngbear* interpreted a Congressional grant of criminal jurisdiction to the state courts of Iowa over the Sac and Fox Indians virtually identical to the grant of jurisdiction to the Kansas State Courts at issue here. *See* Act of June 30, 1948, ch. 759, 62 Stat. 1161, Pub.L. No. 846. The court relied on the legislative history of the Kansas Act, after which the Iowa Act was modeled, to support its conclusion that the Iowa Act did not confer state court jurisdiction over crimes enumerated in the Major Crimes Act. *See* 549 F.2d at 76.

**3.** As originally drafted, the Kansas Act was entitled a "bill to relinquish concurrent jurisdiction to the State of Kansas to prosecute Indians or others for offenses committed on Indian reservations." H.R.Rep. No. 1999, 76th Cong., 3d Sess., accompanying H.R. 3048. This language was amended to read: "A bill to confer jurisdiction on the State of Kansas over offenses committed by or against Indians on Indian reservations." *Id.*

**4.** As originally drafted, the Kansas Act would have provided as follows:

"Be it enacted ... that *concurrent* jurisdiction is hereby relinquished to the State of Kansas to prosecute Indians and others for offenses by or against Indians or others, committed on Indian reservations in Kansas, including trust or restricted allotments, to the same extent as its courts have jurisdiction for offenses committed elsewhere within the State in accordance with the laws of the State; *and section 328 of the Act of March 4, 1909 (35 Stat. 1151) as amended by the Act of June 28, 1932 (47 Stat. 337) and sections 2145 and 2146 of the United States Revised Statutes* (U.S.C., title 18, section 548, title 25, secs. 217, 218), *are modified accordingly* insofar as they apply to Indian reservations or Indian country in the said State of Kansas."

86 Cong.Rec. 5596, 76th Cong. 3d Sess. (May 6, 1940) (emphasis added).

"[T]he bill, as now worded, does not express with entire accuracy the legal situation as it now exists or as intended to be created. The bill proposes to relinquish concurrent jurisdiction to the State of Kansas, *intending thereby to give the State jurisdiction of all types of crimes, whether major or minor, defined by state law.* However, the Federal Government has exercised jurisdiction only over major crimes. Therefore, strictly speaking, *this is* not a case of relinquishing to a State a jurisdiction concurrent with that of the United States, but *a case of conferring upon the State complete criminal jurisdiction, retaining however, jurisdiction in the Federal courts to prosecute crimes by or against Indians defined by Federal law.*"

House Report at 3 (emphasis added). The term "concurrent jurisdiction" was thus removed because it did not accurately describe the bill in any of its forms. Federal courts did not exercise jurisdiction over all state-law offenses, and therefore those courts would not be sharing concurrent jurisdiction with Kansas over all crimes. Conversely, federal courts under the Major Crimes Act possessed exclusive jurisdiction over the crimes enumerated therein. At the time of its enactment, therefore, the Kansas Act was to confer *concurrent* jurisdiction *only* as to those crimes covered by the Major Crimes Act. As explained by the Secretary, Congress' decision to excise the word "concurrent" from the title of the Act was to clarify rather than to change its substance. Reference to modification of the Major Crimes Act was apparently dropped as unnecessary when the second sentence of the Kansas Act was added instead.

Negonsott maintains that construing the Kansas Act to confer jurisdiction on the state courts over crimes enumerated in the Major Crimes Act is inconsistent with the well-settled rule that " 'statutes passed for the benefit of dependent Indian tribes ... are to be liberally construed, doubtful expressions being resolved in favor of the Indians.' " 426 U.S. at 392, 96 S.Ct. at 2112 (quoting *Alaska Pac. Fisheries,* 248 U.S. at 89, 39 S.Ct. at 42. If we were to adopt the state's interpretation, Negonsott contends, the historically exclusive stewardship of the federal government over major crimes committed on a reservation would be eliminated, and Indians could be subject to double prosecution under both federal and state law.

We do not believe that our interpretation is inconsistent with this canon of statutory construction. The Kansas tribes themselves, in the interest of establishing law and order on Indian lands, "expressed a wish that the jurisdiction hitherto exercised by the State courts [over both major and minor crimes] be continued." House Report at 4–5. We are unwilling to conclude that state court criminal jurisdiction *conferred by Congress in response to tribal requests* invades the special relationship between the tribes and the federal government. If anything, the Kansas Act reflects congressional responsiveness to Tribal needs for unified law enforcement as expressed by the Tribes themselves.

As to any prejudice the tribes may suffer from overlapping state and federal jurisdiction, the overlap resulted from legislation requested of Congress by the Tribes. No instance of double prosecution under the scheme in Kansas has been brought to our attention and, in any event, this hypothetical burden is not peculiar to Indian lands, but applies to nearly all Americans who live under overlapping federal and state jurisdictions.[5]

---

**5.** It is arguable that double jeopardy would attach to successive prosecutions under the Kansas Act and the Major Crimes Act. Negonsott cites *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), in support of his double jeopardy argument. *Wheeler* concerned successive prosecutions under tribal law in tribal court and under federal law in federal court. The Court held that double jeopardy did not attach because the Tribe retained inherent tribal sovereignty apart from the exercise of federal sovereignty in the subsequent prosecution. *Id.* at 329–30, 98 S.Ct. at 1089–90. The present case, by contrast, involves the exercise of state authority *pursuant to a congressional delegation of authority under federal sovereign power.* The Kansas state court is arguably an arm of the federal government when it prose-

In sum, we conclude that the purpose of the Kansas Act as reflected in its legislative history indicates that Congress intended to confer jurisdiction on the Kansas state court to prosecute petitioner for aggravated battery, a state-law crime also enumerated and defined for purposes of federal court jurisdiction in the Major Crimes Act. We therefore AFFIRM the district court's dismissal of the petition.

cutes under the Kansas Act, thereby barring subsequent federal prosecutions in federal court. *See id.* at 327 n. 26, 98 S.Ct. at 1088 n. 26. We need not and do not decide this issue.