# IN THE COURT OF APPEALS OF IOWA

No. 19-1716
Filed October 20, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAYCIE SHEEDER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Jasper County, Thomas P. Murphy,

Judge.


        Jaycie Sheeder appeals her convictions of murder, robbery, and accessory

after the fact, and the sentence imposed for robbery.  **CONVICTION AFFIRMED;**

**SENTENCE VACATED IN PART AND REMANDED FOR RESENTENCING.**


        Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney

General, for appellee.


        Heard by Mullins, P.J., and Schumacher and Ahlers, JJ.

**MULLINS, Presiding Judge.**

Jaycie Sheeder appeals her convictions of murder and robbery in the first degree and accessory after the fact, and the sentence imposed for robbery. She argues the State failed to prove she had knowledge that a codefendant intended to commit an assault, co-conspirator statements were improperly admitted, the prosecutor engaged in misconduct, and the district court failed to exercise discretion in sentencing.

## I.      Background Facts and Proceedings

Prior to June 22, 2018, Sheeder and J.M. used drugs together and were engaged in a romantic relationship. At some point, that relationship ended, and Sheeder began a relationship with Jeffrey Stendrup. In the past, Stendrup supplied methamphetamine to Sheeder and J.M. When J.M. became aware of the relationship between Sheeder and Stendrup, he allegedly stole property from both people, including cars, drugs, and cash. Sheeder and Stendrup attempted to use self-help to reclaim the items. J.M. eventually contacted Sheeder to tell her where some of the stolen property could be found.

On June 21, an associate of J.M.'s contacted Stendrup to buy methamphetamine. Stendrup agreed to supply the drugs only if the associate would make sure J.M. was present for the exchange at the associate's residence. The associate arranged for J.M. to come to the home and alerted Sheeder and Stendrup. J.M. arrived at the associate's home around 11:00 p.m. Stendrup and Sheeder arrived around 1:30 a.m. on June 22. Stendrup entered the home but Sheeder did not.

Trial testimony was provided by multiple witnesses, none of whom provided consistent information. The following facts are undisputed. J.M. consumed methamphetamine prior to the incident and had a history of a heart condition. J.M. was beaten with a baseball bat in the residence, and the violent encounter between Stendrup and J.M. resulted in damage to the associate's residence. Sheeder searched for property in a van J.M. occupied prior to the incident. Stendrup left with Sheeder following the encounter. When Stendrup left, J.M. was face-down in the living room and appeared to be breathing but was unresponsive when spoken to. Stendrup and Sheeder drove to Altoona. The associate called his girlfriend, who then contacted Sheeder and insisted that she return to help the associate. Sheeder returned to Colfax, and J.M. was still unresponsive. A neighbor was summoned to help Sheeder and the associate move J.M. into the van. Sheeder then drove J.M. to a restaurant near a gas station in Newton and contacted the authorities for help.

Police and emergency medical response met Sheeder around 3:20 a.m. When paramedics began attempts to revive J.M., they found he had no pulse, felt cold to the touch, and was turning blue. He was pronounced dead. Sheeder was interviewed outside of the gas station. Her stories to multiple police officers and sheriff's deputies were inconsistent. Sheeder was transported to the Jasper County Sheriff's Office and was interviewed by multiple law-enforcement authorities for the next several hours.

In July, Sheeder was arrested and charged with murder in the first degree in violation of Iowa Code sections 707.1 and .2(1)(b) (2018), robbery in the first degree in violation of Iowa code sections 711.1 and .2, and accessory after the

fact in violation of Iowa Code section 703.3. Her proceedings were severed from Stendrup's, and trial was held in May 2019. A jury convicted Sheeder on all three counts. Sheeder moved for new trial, arguing the verdicts were contrary to the evidence, allegedly improper hearsay was admitted, prosecutorial error occurred, and her trial counsel provided ineffective assistance. The motion was denied. Judgment and sentence were entered in October 2019. Sheeder appeals.

## II. Standard of Review

Sheeder argues the State failed to prove she knew Stendrup intended to commit an assault and, thus, insufficient evidence was provided to support that she committed or aided and abetted in the robbery. "Sufficiency of evidence claims are reviewed for a correction of errors at law." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). "The jury's findings of guilt are binding on appeal if the findings are supported by substantial evidence." *State v. Leckington*, 713 N.W.2d 209, 213 (Iowa 2006). "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Henderson*, 908 N.W.2d 868, 875 (Iowa 2018). "In making determinations on the sufficiency of the evidence, we view the evidence in the light most favorable to the state." *Id.*

"The standard of review with respect to the admission of hearsay evidence is for correction of errors at law." *State v. Huser*, 894 N.W.2d 472, 495 (Iowa 2017). But, a statement "made by the party's [co-conspirator] during and in furtherance of the conspiracy" is excluded from the rule against hearsay. Iowa R. Evid. 5.801(d)(2)(E). Before co-conspirator statements may be admitted,

> the trial court must make a preliminary finding, by a preponderance
> of evidence, that there was a conspiracy, that both the declarant and
> the party against whom the statement is offered were members of

the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy.

*Id.* The district court's preliminary findings are reviewed for substantial evidence. *Huser*, 894 N.W.2d at 504.

"Our standard of review of a sentence of the district court is for an abuse of discretion." *State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). "An abuse of discretion occurs when the district court exercises its discretion on grounds that are 'clearly untenable or to an extent clearly unreasonable.'" *State v. Moore*, 936 N.W.2d 436, 439 (Iowa 2019) (quoting *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016)).

## III.    Discussion

### A.    Ineffective Assistance of Counsel

Sheeder argues she was provided ineffective assistance of counsel because her trial counsel failed to object to prosecutorial error. To the extent the claim runs afoul of Iowa Code section 814.7 (Supp. 2019), Sheeder argues the claim should be heard on direct appeal because the 2019 amendment (1) improperly restricts the role and jurisdiction of Iowa appellate courts and (2) denies her equal protection under the law.

Iowa Code section 814.7 was amended to read,

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

2019 Iowa Acts ch. 140, § 31. The amendment took effect on July 1, 2019. *State v. Damme*, 944 N.W.2d 98, 109 (Iowa 2020). Because judgment and sentence

were entered in October 2019, after the effective date of the amendment, we do not have the authority to consider the ineffective-assistance-of-counsel claim on direct appeal. *Id.* And the supreme court has already rejected Sheeder's separation-of-powers and equal-protection claims. *See State v. Treptow*, 960 N.W.2d 98, 103–07 (Iowa 2021).

### B. Sufficiency of the Evidence

Sheeder argues she did not have knowledge of Stendrup's intent to commit an assault. If Sheeder's argument is correct, it would mean she did not possess the requisite intent for the charges of aiding and abetting in robbery and felony murder. Our review of the record will focus on whether sufficient evidence was presented to support the jury's findings. *Leckington*, 713 N.W.2d at 213. If the evidence presented "would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt," we will affirm. *Henderson*, 908 N.W.2d at 875. Our review considers all of the evidence, including both inculpatory and exculpatory facts. *Sanford*, 814 N.W.2d at 615.

The jury was provided with the following instructions relevant to the sufficiency-of-the-evidence claim raised on appeal.

**Instruction Number 16**

All persons involved in the commission of a crime, whether they directly commit the crime or knowingly "aid and abet" its commission, shall be treated in the same way.

"Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove Jaycie Sheeder's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise,

mere knowledge of the crime is not enough to prove "aiding and abetting."

The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he or she has in it, and does not depend upon the degree of another person's guilt.

If you find the State has proved Jaycie Sheeder directly committed the crime, or knowingly "aided and abetted" other persons in the commission of the crime, then Jaycie Sheeder is guilty of the crime charged.

### Instruction Number 27

The State must prove all of the following elements of Murder in the First Degree:

1. On or about the 21st Day of June, 2018, Jaycie Sheeder, or someone she was aiding and abetting, participated in the crime of Robbery in the First or Second Degree.

2. During the course of the robbery, Jaycie Sheeder, or someone she aided and abetted, struck [J.M].

3. [J.M.] died as a result of being struck.

4. Jaycie Sheeder, or someone she aided and abetted, acted with malice aforethought.

If the State has proved all of the elements, Jaycie Sheeder is guilty of Murder in the First Degree. If the State has failed to prove any one of the elements, Jaycie Sheeder is not guilty of Murder in the First Degree.

### Instruction Number 28

"Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of Jaycie Sheeder, or someone she aided or abetted, and the means used in doing the wrongful and injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.

"Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time.

**Instruction Number 29**

Malice may be inferred from the commission of Robbery which results in death.

**Instruction Number 30**

Malice aforethought may be inferred from the use of a dangerous weapon.

**Instruction Number 33**

The State must prove all of the following elements of Robbery in the First Degree:
1. On or about the 21st day of June, 2018, Jaycie Sheeder, or someone she aided and abetted, had the specific intent to commit a theft.
2. To carry out that intention or to assist her, or someone she aided and abetted, in escaping from the scene, with or without the stolen property, Jaycie Sheeder, or someone she aided and abetted:
    a. Committed an assault on [J.M.]; or
    b. Threatened [J.M.] with, or purposely put [J.M] in fear of immediate serious injury; or
    c. Threatened to immediately commit murder.
3. Jaycie Sheeder, or someone she aided and abetted:
    a. Purposely inflicted or attempted to inflict a serious injury on [J.M.]; or
    b. Was armed with a dangerous weapon.
   . . . .
If the State has proved all of the elements, Jaycie Sheeder is guilty of Robbery in the First Degree. If the State has failed to prove any one of the elements, Jaycie Sheeder is not guilty of Robbery in the First Degree . . . .

**Instruction 36**

A person commits theft when the person takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.

**Instruction 39**

An Assault is committed when a person does an act which is meant to either:
1. Cause pain or injury;

> 2. Result in physical contact which will be insulting or offensive;
> 3. Place another person in fear of immediate physical contact which will be painful, injurious, insulting or offensive to another person when coupled with apparent ability to do the act.

Our supreme court has long held that "[w]hen intent is an element of the crime charged, a person may be convicted as an aider and abettor by participating either with the requisite intent or with the knowledge that the principal possesses the required intent." *State v. Tangie*, 616 N.W.2d 564, 573 (Iowa 2000). We must examine whether Sheeder had the requisite intent to aid or abet Stendrup in the crime of robbery in the first degree.

Our review of the record reveals the following facts. J.M. deprived Sheeder and Stendrup of property that belonged to them but later communicated with Sheeder that he would help her regain that property. Sheeder and Stendrup went to Colfax with the intent to communicate with J.M. about the location of the property. Stendrup entered the Colfax residence alone, but Sheeder went directly to the van J.M. was known to drive to search for her property that was in J.M.'s possession. These facts are sufficient to allow a reasonable jury to find beyond a reasonable doubt that Sheeder intended to voluntarily go to the scene with Stendrup to stage a surprise confrontation with J.M.

The record also reveals that Sheeder was in contact with Stendrup, the associate, and J.M. in setting the meeting that occurred in the early morning hours of June 22. Sheeder transported Stendrup to the Colfax residence for the purpose of learning the location of the stolen property or finding it herself. The associate who occupied the residence testified that he saw J.M. attempt to flee to the kitchen when Stendrup entered. When the associate was able to see Stendrup, he was

carrying a baseball bat. Fingerprint evidence also established that Stendrup handled the bat. The associate saw Stendrup swing the bat at J.M. and attempted to seek help from Sheeder, telling her either that J.M. could be hurt or that J.M. could be killed. The associate's testimony also revealed that Sheeder could hear the violent incident on her phone[1] and refused to engage when asked for help. When the incident was over, Sheeder transported Stendrup away from the residence. Sheeder admitted that she had a baseball bat in her car in the days prior to the incident and that she held it at her side in a prior situation that placed her in fear for her safety. Both Sheeder and Stendrup were frustrated that their property was stolen and had already engaged in self-help attempts to reclaim the property. Although minimal attempts to involve law enforcement were made, the parties engaged in self-help methods by enlisting others to intimidate parties in possession of the property.

On our review of the record, we find the evidence presented was sufficient to allow a reasonable jury to find that Stendrup entered the home with the baseball bat for the purpose of, at a minimum, threatening injury to J.M. and had the apparent ability to inflict that injury. The evidence was sufficient to prove that Stendrup possessed the requisite intent to commit an assault. *See id.* Furthermore, Sheeder's conduct transporting Stendrup to and from the scene, communicating with the others to arrange the surprise meeting, searching the van while Stendrup confronted J.M., and ability to hear the altercation and refusing to

---

[1] Sheeder apparently was on a phone call with J.M. when Stendrup entered the residence, and the phones were still connected during the assault.

intervene are sufficient to convince a reasonable jury that she possessed knowledge of Stendrup's intent to commit the assault. *See id.*

C. Co-conspirator Statements

Sheeder argues the district court erred in admitting co-conspirator statements made by Stendrup to a friend, J.L. The State contests error preservation. In a hearing on pretrial motions, Sheeder argued the testimony provided by J.L. was hearsay and that any evidence she provided was irrelevant. Sheeder then filed a motion in limine to exclude J.L's testimony as hearsay, and oral arguments were presented at a hearing.

J.L.'s testimony at trial began with an offer of proof and was followed by oral arguments on the admissibility of her testimony. The court's ruling included the following statements:

> I'm going to allow some of the statements. I don't want a long-drawn-out history of drug use and everything else to come in. I think it's fair to start with things were taken, to keep it very simple, and then to move on from the people in Colfax reached out to [Stendrup]. I don't expect [J.L.'s] testimony to be drawn out. And I can't give more specifics.
> And [defense counsel], you are certainly welcome to object during direct. Okay?
> I do think that there is a prima facie case for the co-conspirator exception. Every crime or most crimes have a concealment phase. Sometimes it turns on whether concealment was planned as part of the original crime.
> But certainly the evidence so far has established that Ms. Sheeder was not entirely forthright as far as we can tell at this point when—the next morning when Mr. Stendrup was making these statements.
> I will entertain objections. And I expect this to be on a tight leash. Okay?

Sheeder objected to the entry of Facebook messages exchanged between Stendrup and J.L. on relevance grounds; the objection was overruled. Sheeder

also objected to the phrasing of a question about whether Stendrup attempted to involve law enforcement to retrieve the stolen property; the question was rephrased.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.*

The transcript reveals that the following rulings were definitively made: (1) a prima facia case for the co-conspirator exception was established for some statements, (2) the Facebook messages were relevant, and (3) a question needed to be rephrased. Other than those rulings, the only record we have indicates that "some statements" were admissible as co-conspirator statements and the judge would hear objections throughout J.L.'s testimony. It does not appear that a written ruling was ever rendered on the motion in limine. "Where a motion in limine is resolved in such a way that it is beyond question whether or not the challenged evidence will be admitted during trial, there is no reason to voice objection at such time during trial." *Tangie*, 616 N.W.2d at 569 (quoting *State v. Miller*, 229 N.W.2d 732, 768 (Iowa 1975)). The district court's statements that it could not be specific about which messages and testimony would be admitted and that objections would be entertained clearly show that objections and further arguments were necessary when Sheeder felt testimony was inadmissible. *See id.* Accordingly, we find the only final rulings made were on the existence of a prima facie case for the co-

conspirator exception for some of Stendrup's statements, the relevance of the Facebook messages, and the phrasing of one question. No further ruling was made on any of the other statements admitted because Sheeder's counsel never made an objection, as they were instructed. Error is not preserved. *See Meier*, 641 N.W.2d at 537.

D. Sentencing

Sheeder argues the district court erred in imposing a mandatory sentence for her conviction of first-degree robbery when it had discretion to lower the mandatory sentence from seventy to fifty percent of the maximum, pursuant to Iowa Code section 902.12(3). The State concedes that the district court failed to exercise discretion. We vacate the sentence for first-degree robbery and remand for resentencing of Sheeder for her conviction of first-degree robbery.

The parties noted a scrivener's error in the sentencing order entered by the district court, stating that Sheeder was convicted of "Count 1: Murder in the First Degree in violation of Iowa Code section(s) 707.1, 707.2(1)(a) . . . ." The parties agree that Sheeder was convicted pursuant to Iowa Code sections 707.1 and 707.2(1)(b). On remand, the district court shall correct the scrivener's error to reflect Sheeder's conviction pursuant to sections 707.1 and 707.2(1)(b).

IV. Conclusion

On our review of the record, we find sufficient evidence was presented to support the jury's guilty verdict for murder in the first degree. The district court's vague comments about the admissibility of co-conspirator statements and announcement that objections would be entertained render any arguments on statements that did not receive an objection unpreserved for our review. The State

concedes that the district court did not exercise discretion when imposing the sentence for first-degree robbery; we vacate that sentence only and remand for resentencing and correction of the code section for Sheeder's murder conviction.

**CONVICTION AFFIRMED; SENTENCE VACATED IN PART AND REMANDED FOR RESENTENCING.**